443 So.2d 766 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Rickey JOHNSON, Defendant-Appellant.
No. CR83-358.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
Writ Denied February 16, 1984.
*767 William D. Dyess, Many, for defendant-appellant.
James L. Davis, Dist. Atty., Many, Abbott Reeves, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Before CUTRER, DOUCET and LABORDE, JJ.
CUTRER, Judge.
The defendant, Rickey Johnson, was indicted and convicted for the aggravated rape of Yvette Perry, in violation of LSA-R.S. 14:42. A motion for a new trial, on the basis of five assignments of error, was heard and denied by the trial judge. The mandatory statutory penalty of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence was subsequently imposed.
The defendant appeals his conviction, raising the same five assignments of error alleged as grounds for a new trialviz, the trial court erred:
(1) In allowing the prosecutor to refer to other crimes or bad acts of the defendant and also in allowing the prosecutor to introduce certain testimony as to the defendant being on probation at the time of the offense at issue;
(2) In prohibiting the defendant from exercising his constitutional right to confront the prosecuting witness (rape victim) by denying the defendant the right to cross-examine the victim as to her prior sexual conduct or reputation for chastity;
(3) In not allowing the defendant adequate time to present a defense to an alleged "Prieur notice," which was provided by the State only five (5) days before the trial was to begin;
(4) In permitting the prosecutor to violate the guidelines of State v. Prieur, 277 So.2d 126 (La.1973); and
(5) In failing to properly charge the jury as to the limited purpose of the State's "other crimes" evidence, which could not form the basis for convicting the defendant of the offense being tried.

FACTS
In the early morning hours of July 12, 1982, Yvette Perry was awakened from her sleep by the presence of an armed intruder, who placed a pistol to her head and ordered her to disrobe. At this time, Ms. Perry (age 22) was living in an apartment in Many, Louisiana, with her three young children. Threatening to blow out the victim's brains if she didn't cease her crying, the assailant then raped Ms. Perry. Making no attempt to mask his identity, the rapist stayed in the victim's apartment for approximately four hours.[1] During his stay and after the initial rape of the victim, the intruder related to Ms. Perry various personal *768 details about himself.[2] Subsequent to this conversation, the victim was once again raped and, thereafter, her assailant departed.
Through a physical description of the rapist and the personal data which he had provided his victim, the defendant was arrested on July 14, 1982. Ms. Perry had identified the defendant from a photographic line-up on July 12th, and at trial she positively identified defendant as being the man who had twice raped her.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment the defendant complains of several instances at trial, wherein he alleges that the State was impermissibly allowed by the trial judge, over defendant's objection, to refer to other crimes or bad acts by the defendant. A general statement of the reasons for prohibiting "other crimes" evidence is found in State v. Ledet, 345 So.2d 474, 477 (La.1977):

"In order for a person to be found guilty of a crime, the state must prove beyond a reasonable doubt that the accused committed the crime with which he stands charged, not that he may have committed it because he is a bad man who has committed other offenses on other occasions. State v. Frederick, 340 So.2d 1353 (La.1976); State v. Slayton, 338 So.2d 694 (La.1976); State v. Gaines, 340 So.2d 1294 (La.1976). Only under certain limited circumstances may the state introduce evidence of other criminal acts committed by an accused. See R.S. 15:481, 491, 495."

The first instance complained of was the victim's testimony that the defendant had told her that he was on probation.[3]
The State, in what it deemed to be an "abundance of caution" notified the defendant, pursuant to State v. Prieur, supra, that it intended to introduce the victim's testimony regarding the defendant's statement to her. The State's notice provided in detail the content of the defendant's statements, including his reference to "probation or parole." Opining that it had no duty to provide defendant with this notice as the defendant's statements were part of the res gestae, the State, nevertheless, did provide the notice and also indicated that it intended to call both the officer to whom the victim had related the information and the probation officer who had aided in establishing the defendant's identity.[4] The prosecution stated that this testimony would be "used for the sole purpose of proving what the defendant said to the victim from which the defendants [sic] identity was obtained."[5]
In a hearing outside of the jury's presence, the trial judge overruled the defendant's objection to the State's reference to defendant's probation,[6] finding that the defendant's statements fell within the res gestae of the crime and that the State was not attempting to use "a whole series of prior crimes."[7] We agree.
*769 In the case at bar the armed defendant told the victim of his probation after he had initially raped her but before he raped her the second time. Our Supreme Court has addressed this precise issue in a case involving strikingly similar facts. In State v. Wilson, 363 So.2d 481 (La.1978), the court ruled on the admissibility of that victim's testimony that her attacker, during the interim of raping her twice, mentioned that he had been to Angola (the State penitentiary).
We find the following language to be both controlling and dispositive to the issue before us:

"Defendant argues that the reference to Angola does not comprise part of the res gestae under LSA-R.S. 15:447 since the reference was to events remote in time and space. However, the defendant's own statements during the commission of a criminal act are the spontaneous words of a participant and comprise part of the res gestae under LSA-R.S. 15:447. State v. Sepulvado, La., 342 So.2d 630 (1977); State v. Williams, La., 331 So.2d 467 (1976); State v. McKinnon, La., 317 So.2d 184 (1975).

"In the present case, the defendant's statement that he had been to Angola was made after he entered the victim's home armed with a dangerous weapon. The victim stated that she submitted to the defendant because she was in fear of her life since the defendant had already stated he had been in Angola. Thus, the defendant's statements were clearly part of the res gestae since they were made after the defendant entered the house armed with a dangerous weapon and before he raped the victim. Under LSA-R.S. 15:447, the res gestae is always admissible in evidence. State v. Morris, La., 340 So.2d 195 (1976); State v. Curry, La., 325 So.2d 598 (1976; State v. Hatch, La., 305 So.2d 497 (1975)."

The present defendant's statements were spontaneously made during the commission of at least two criminal acts and were, accordingly, part of the res gestae. The trial judge correctly so ruled and did not err in declaring the victim's testimony admissible.
The second allegedly impermissible reference to other crimes occurred during the State's examination of Ken Welsh, defendant's probation officer at the time of the crime at issue. The dialogue complained of is as follows:
"BY THE DISTRICT ATTORNEY:
"Q. Is he a convicted criminal?
MR. DYESS: Objection, Your Honor.
DISTRICT ATTORNEY: What do you mean objection? I have asked a question and he will be able to say yes or no.
THE COURT: Approach the Bench, please. (Both counsel to the bench) The objection is sustained and the State is requested to rephrase its question.
DISTRICT ATTORNEY (Continuing)
"Q. Do you know whether this individual has ever been convicted of any criminal conduct or not?
"A. Yes. He's on probation."
The State never sought to elaborate upon the crime for which the defendant had been on probation.[8]
We previously found that the victim's testimony regarding the defendant's probation was properly admissible into evidence. Walsh's testimony merely corroborated that which had already been entered into evidencei.e., the defendant had been on probation. The evidence was introduced by the State solely to establish how the officers had followed up on the victim's leads, which ultimately led to the defendant's arrest. Assuming, arguendo, that Walsh's testimony was an impermissible reference *770 to another crime by the defendant, it was clearly harmless, as the victim had earlier made the same reference.[9] Harmless error may not form the basis for reversal upon appeal. LSA-C.Cr.P. art. 921.[10]
The final reference to other crimes complained of by the defendant occurred during the State's cross-examination of the defendant's mother, set forth as follows:
"Q. Do you know if your son has ever been convicted or anything?
A. No.
MR. DYESS: Objection, Your Honor.
DISTRICT ATTORNEY: (Continuing)
Q. Has not?
THE COURT: Sustained.
DISTRICT ATTORNEY: She can testify about convictions, Judge, if she knows.
THE COURT: That is only admissible for the purpose of impeachment of the witness on the stand. The objection is sustained.
DISTRICT ATTORNEY: That's all. I don't have any other questions.
MR. DYESS: That's all."
We note, initially, that we fail to see any manner in which the defendant has been prejudiced by the complained of question and answerespecially since the witness (defendant's mother) answered that she did not know that her son had ever been convicted of any crime.
However, even assuming that the defendant was prejudiced, we find that the defendant did not take the proper steps to preserve this issue upon appeal. When an accused timely objects to certain remarks or comments made in the presence of the jury, he has available to him the mandatory mistrial provisions of LSA-C.Cr.P. art. 770 or the discertionary mistrial or admonition provisions in LSA-C.Cr.P. art. 771. In the instant case, the defendant's objection to the question asked by the prosecutor was sustained by the trial judge; the defendant did not, however, request any relief in the form of a mistrial or an admonishment to the jury. The jurisprudence is clear that the failure to lodge either of these requests in a manner which would timely allow the trial judge to cure the alleged defect precludes the defendant from raising the issue on appeal. State v. Michel, 422 So.2d 1115 (La.1982); State v. Miles, 402 So.2d 644 (La.1981); State v. Baylis, 388 So.2d 713 (La.1980); State v. Nicholas, 359 So.2d 965 (La.1978).
For the aforementioned reasons, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant argues by this assignment that he was denied his constitutional right to confront the witness against him, when the trial judge denied him the right to cross-examine the victim as to her prior sexual conduct or reputation for chastity.[11] An examination of the record indicates that defense counsel, cognizant of the prohibitions in LSA-R.S. 15:498[12] requested to the trial judge that he be allowed to delve into the evidence concerning the victim's contraction of venereal disease.
The defendant had had three tests for veneral disease performed at the order of the State, and the trial judge agreed with *771 the defendant that he should be allowed to inquire into the victim's disease, although he would not be allowed to go into detail regarding the sexual acts themselves. And, at trial, the victim stated under cross-examination that she believed that she could have contracted venereal disease from either the defendant or from another named man, whose surname differed from her own. The victim's testimony that she had had sexual relations with another man, presumably not her husband, was followed by other questions by the defense regarding the test results performed upon that other man. The victim stated that she had been told that the test results were negativeindicating that her paramour had not contracted venereal disease. No objections to this line of questioning were lodged by the State, and the defendant was, therefore, allowed to question, as he had earlier requested, the victim regarding her contraction of venereal diseasealthough this clearly encompassed evidence of another sexual act by the victim with someone other than the defendant.
No request was made by the defendant to be allowed to inquire into further sexual activity by the victim, and no objection as to the line of questioning allowed by the trial judge was made by the defendant. The requested cross-examination of the victim was allowed by the trial judge, and the victim may not now complain that an unobjected to error occurred.
At the hearing on his motion for a new trial, the defendant requested the trial judge to declare R.S. 15:498 unconstitutional, as having infringed upon his right to confront the witnesses against him. The trial judge ruled that no basis for declaring an unconstitutional infringement had been shown, and he denied the motion on that ground.
Our Supreme Court has noted that R.S. 15:498 might unconstitutionally restrict the accused's confrontation right, when the evidence of the victim's sexual conduct is genuinely relevant to the issue of guilt or innocence. State v. Dawson, 392 So.2d 445 (La.1980); State v. Decuir, 364 So.2d 946, 948 (La.1978) (concurring opinion). However, when the victim's prior sexual activity with someone other than the accused has no relevance to the issue of her consent involving a subsequent act of rape, no allegation of unconstitutional impingement may be maintained. State v. Dawson, supra. Such is true in the instant case. No showing of any possible relevance regarding the victim's prior sexual history has been made by the defendant.[13]
The trial judge correctly upheld the constitutionality of R.S. 15:498, and he even allowed the defendant, at his request, a latitude of inquiry into the victim's past sexual acts, regarding her contraction of venereal disease. We can find no error under these facts. Accordingly, this assignment has no merit.

ASSIGNMENTS OF ERROR NUMBERS 3, 4 and 5
By these assignments the defendant alleges that the State failed to comply with several of the guidelines set forth in State v. Prieur, 277 So.2d 126 (La.1973). The judicial guidelines of Prieur are requirements the State must meet before it can enter into evidence other crimes of the defendant under the exceptions delineated in LSA-R.S. 15:445[14] and 15:446.[15]
*772 The requirements imposed by Prieur are set forth as follows:
"(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto."
Defendant complains that violations of 1, 3, 4 and 5 occurred.[16]
In overruling the defendant's objections (both at trial and at the motion for a new trial) on the basis of Prieur, the trial judge found that the other crimes evidence was admissible under the res gestae exception and, therefore, required no compliance with Prieur. We previously agreed with the trial judge's ruling as to the applicability of the res gestae exception for other crimes evidence, and we are likewise in accord with his ruling that the State was not, because of the doctrine of res gestae, required to comply with Prieur's guidelines.
Our Supreme Court, in State v. Goza, 408 So.2d 1349, 1351 (La.1982), stated the following:
"Evidence of offenses which are part of the res gestae, or convictions used to impeach defendant's testimony, are the only exceptions to the Prieur rules requiring the prosecution to give reasonable, particularized notice to the accused of any other crimes evidence it intends to offer."
This is a restatement of the principle that Prieur notice is not necessary when evidence of the other crimes is part of the res gestae. State v. Williams, 375 So.2d 364 (La.1979).
As the other crimes evidence was part of the res gestae in the instant case, we find that the trial judge properly rejected the defendant's claims that the State was required and failed to comply with the Prieur guidelines. This assignment is, therefore, without merit.
For these reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The initial intrusion was at approximately 2:00 A.M., and the attacker left at 6:00 A.M.
[2] Revelations made by the intruder are as follow:

(1) He had gone to prison for murder and, because he was on probation, his use of a weapon could result in his return to prison;
(2) His family was in Natchitoches, and he was from Leesville;
(3) He was the father of a child, and the mother's name was Tiny; and
(4) His name was Marcus Johnson.
[3] A hearing on this issue was held outside of the jury's presence, and the trial judge ruled that the testimony was admissible. The defendant timely objected to this ruling.
[4] At trial the State called only one probation and parole officerKen Welsh.
[5] The defense attempted, through the use of alibis by the defendant's mother and brother, to establish that the defendant was not in the victim's apartment at the time of the rape. However, the State appears to have successfully rebutted these attempted alibis.
[6] Although the objection was primarily couched in terms of noncompliance with State v. Prieur, defense counsel timely objected (LSA-C.Cr.P. art. 841) to the other crimes evidence.
[7] LSA-R.S. 15:447 defines res gestae as:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
[8] In fact, it was defense counsel who subsequently attempted to delve into the crimes two (2) according to himwhen the trial judge cautioned him that such a line of questioning could open the whole area of the defendant's prior acts. Counsel heeded the caution by discontinuing his line of questioning regarding the defendant's probationary crimes.
[9] Although it is arguable that the defendant failed to preserve this issue on appeal by not objecting contemporaneously a second time to Welsh's testimony and by failing to request a mistrial under LSA-C.Cr.P. arts. 770 or 771, we have considered the issue, because the defendant had initially objected to any reference by the State of defendant's prior acts. The objection was overruled by the trial judge, and the defendant timely objected to this ruling.
[10] The trial judge, subsequent to defense counsel's question to Welsh regarding defendant's past crimes, sua sponte admonished the jury that the defendant was only on trial for the charge of aggravated rape.
[11] The confrontation right is provided in the Sixth Amendment to the United States Constitution and by Article I, § 16 of the Louisiana Constitution.
[12] "Evidence or prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused."
[13] The defendant apparently felt that he should be allowed to draw the jury's attention to the fact that Ms. Perry has two illegitimate children. He claimed that Ms. Perry did not know the identity of those children's fathers. However, Ms. Perry, at the preliminary examination hearing, said that she did know the identity of the fathers. We find none of this to be relevant to the case at bar.
[14] LSA-R.S. 15:445 states:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
[15] LSA-R.S. 15:446 provides:

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
[16] Notice was given by the State on December 28, 1982, when the trial was set to commence on January 3, 1983. It actually began on January 5, 1983. Defendant contends this was an unreasonably short time.