GAUDIN, Judge.
Appellant Lester Chairs was convicted by a 12-person jury of armed robbery of a 7-11 convenience store in Jefferson Parish and sentenced to 99 years at hard labor without benefit of parole, probation or suspension of sentence. He was tried in September, 1983 and sentenced on January 11, 1984.
On November 13, 1985, Chairs was granted an out-of-time appeal. He assigns two district court errors:
(1) The trial judge erred in not suppressing the identification of appellant as the armed robber, and
(2) It was error for the trial judge not to grant a mistrial because the prosecuting attorney, in his closing argument, called the jury’s attention to the fact that Chairs had not testified and had not presented a defense.
Chairs assigned other errors but they were neither briefed nor orally argued. Consequently, these assignments are abandoned in line with Rule 2-12.4, Uniform Rules — Courts of Appeal, and State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984).
We did consider the two assignments of error appellant did present and we found them without merit. Also, there are no errors patent. Accordingly, Chairs’ conviction and sentence are affirmed.
THE ARMED ROBBERY
On March 9, 1983, at approximately 2:15 a.m., a man later identified as Chairs entered a convenience store at 1300 Jefferson Highway and asked for a pack of cigarettes. The cashier obtained the cigarettes, but when she went to hand them to Chairs she realized he had a pistol pointed at her. The cashier was ordered to hand *204 over all of the money in the cash register, which she did. She was then forced into a storage room.
Ten minutes later, a newspaper delivery man, Melvin Bodenheimer, entered the store with the daily papers. After placing the newspapers in the paper rack and performing other routine tasks, Bodenheimer started out of the store when Chairs, pistol in hand, came out of the storage room. Bodenheimer was ordered to the rear of the store and told to lie on the floor, face down.
Shortly thereafter, two security officers, employed by Ochsner Hospital, Terryl Sanders and Halton Newman, entered the store. They were ordered, at gun point, to lie next to Bodenheimer. Chairs then confiscated Bodenheimer’s coin apron and a two-way radio from each of the security officers.
Another customer then entered the store and was told to lie face down with the others.
Chairs next ordered everyone but the cashier outside of the store and into the Ochsner security vehicle. Sanders, at Chairs’ command, drove the truck a few blocks before Chairs left the vehicle and fled on foot, taking with him money from the store and from Bodenheimer’s coin apron and the two radios.
When police arrived at the store, the cashier gave statements and a description of the gunman. Chairs later became a suspect as a result of an investigation by detective Susan Miller on another armed robbery case.[1] She forwarded a photograph of Chairs to detective Dennis Gordon, who was investigating the convenience store robbery.
Police prepared a photographic lineup which was displayed separately to the cashier and to Sanders and Newman. Each positively identified Chairs from the photo array and each made firm in-court identifications. Bodenheimer also identified Chairs during the trial.
ASSIGNMENT NO. 1
Chairs contends that the photographs shown to the cashier and the two security personnel were “mug shots” and were suggestive of prior criminal activity, thereby having a prejudicial effect first on the victims and later on the members of the jury.
The photographs were taken for police use and they do have lettering and an identification number on the front side. Actually, the photos shown to the victim are two-fold, showing both a frontal and profile view of each man. Each photograph is thusly identified on the bottom:
SHERIFF’S DEPT.
JEFFERSON PARISH
GRETNA, LA.
Beneath “Gretna, La.” is each person’s identification number. The lettering and numbering do not obstruct the upper torsos and faces of the men photographed. Chairs cites LSA-R.S. 15:495 and State v. Prieur, 277 So.2d 126 (La.1973).
A conviction based on eyewitness identifications at trial following pretrial photographic identifications will be set aside on that ground only if the photographic identification procedures were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable mis-identification. See Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and State v. Johnson, 333 So.2d 223 (La.1976). The lineup is unduly suggestive if the identification procedure displays the defendant such that the witnesses’ attention is focused on the defendant, as discussed in State v. Neslo, 433 So.2d 73 (La.1983).
A review of the five photographs here reveals that they are of the same size and shape with similar backgrounds. Further, the men in the photographs are of fairly similar age, build, complexion and features. *205 Also, the testimony shows that the lineups were not conducted in a suggestive manner.
Officer Gordon, who showed the photographs to eyewitnesses Sanders and Newman, testified both at the suppression hearing and at trial that he presented the photographs to each victim independently of the other, and that he handed the photographs to each witness in a stack with the defendant’s photograph neither first nor last. The officer said that neither witness looked at the back of the photographs, which would have had arrest information on it.
Sanders and Newman also testified at both the suppression hearing and at trial. They stated that nothing was suggested by the police officer and that they had not looked at the backs of any photographs until after they had made an identification of Chairs and were asked to place their signatures on the rear side of Chairs’ picture.
Vince Lamia, the detective who showed the photographs to eyewitness Mrs. Beulah Green, the cashier, testified at the suppression hearing and at trial that he gave Mrs. Green the photographs in a stack with the defendant’s photo neither first nor last, and that she was instructed not to look at the rear of the photos. Mrs. Green testified that the detective did not suggest anything to her.
Under these circumstances, the use of mug shots in the photographic lineup would not appear unduly suggestive. See State v. Bruce, 477 So.2d 817 (La.App. 5th Cir.1985), in which this Court held that a photographic lineup shown to a convenience store armed robbery victim was fair despite the fact that the photographs, including the defendant’s, were mug shots.
The victims testified that although Chairs wore a hooded sweatshirt, the lighting in the store was good and that they had viewed appellant face-to-face and from close proximity. Thus, there was an independent basis for each in-court identification.
Bodenheimer, the newspaper man, was not shown any photographs before trial. He positively identified Chairs in the courtroom.
Regarding any possible prejudicial effect on the jurors, we note that the trial judge here followed the procedure outlined in State v. Hall, 260 So.2d 913 (La.1972). He ordered, outside the jury’s presence, that the entire rear and the information on the front side be covered before being offered into evidence. From State v. Hall:
“The fourth and final bill of exceptions alleges it was error for the trial court to admit into evidence state exhibits S-3 through S-8, ‘mug-shots’ of the defendant and several others which were shown to the victim at the time he first identified the defendant. The defendant argues these ‘mug-shots’ revealed prejudicial information as to his prior conflicts with the law. The trial judge, out of the presence of the jury, ordered that the numbers on the front and back of the pictures be covered prior to their being offered into evidence. At the time they were offered to the jury, that information had been concealed from the jurors’ view. No reference was made directly or indirectly to a prior offense committed by the defendant.”
“These photographs were relevant as a predicate to show the fairness of the identification process. La.R.S. 15:441, et seq. The trial judge did not abuse his discretion by admitting the photographs into evidence. We find this final bill lacks merit.”
Once the rear of the photos were covered along with the writing and numbering on the front, Chairs’ trial counsel did not object to the pictures being offered in evidence.
The probative value of the photographs, to show fairness, far outweighed any prejudiced effect. The trial judge did not abuse his discretion in allowing them in evidence.
Chairs’ first assignment of error lacks substance.
*206 ASSIGNMENT NO. 2
During the prosecutor’s closing argument, he said:
“The testimony of Detective Gordon stands, there has been no testimony to conflict with his, no testimony to show that he lied, no testimony to show that anything he said was not correct. The testimony of Detective Lamia stands firm. There has been no testimony otherwise. The testimony of Mrs. Green, Mr. Bodenheimer, Mr. Newman, Mr. Sanders, stands. There has been no other testimony ...”
By this, Chairs contends, the assistant district attorney called attention to the fact that appellant had not testified in his own behalf. Chairs did not call any witnesses, instead resting immediately after the State had concluded its case.
In State v. Perkins, 374 So.2d 1234 (La.1979), heavily relied on by Chairs, the Supreme Court of Louisiana stated that when the defendant is the only person who can dispute prosecution-produced testimony, a reference to that testimony as uncontro-verted does unfairly focus the jury’s attention on the accused’s failure to take the witness stand, requiring a reversal.
Much more often, however, the Supreme Court has found remarks characterizing the State’s case as unrebutted to be within the permissible scope of L.Cr.P. art. 774, which in pertinent part, reads:
“The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.”
See State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Culberth, 390 So.2d 847 (La.1980); State v. Baggett, 292 So.2d 201 (La.1974); and State v. Howard, 263 So.2d 32 (La.1972), and many other cases wherein the Supreme Court discussed at length the impropriety of unfavorable direct or indirect references to a defendant’s Fifth Amendment right to silence.
Here, the prosecuting attorney’s remarks constituted his overall appreciation of the testimony and evidence and were not intended to focus on Chairs’ not testifying, but rather he (the prosecutor) asked the jury to compare the State’s evidence with the defense’s lack of evidence, which is allowable under Art. 774. We find no illegal indirect reference to Chairs’ failure to testify. State v. Perkins, supra, is distinguishable.
For these reasons, we affirm Chairs’ conviction for armed robbery and his 99-year sentence.
AFFIRMED.

. For other cases involving Lester Chairs, see State v. Chairs, 466 So.2d 642 (La.App. 5th Cir. 1985), and State v. Chairs, 466 So.2d 647 (La.App. 5th Cir.1985).