573 So.2d 1185 (1991)
STATE of Louisiana
v.
Mark A. SLAY.
No. 90-KA-563.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 1991.
Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff/appellee.
Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant/appellant.
Before BOWES, GAUDIN and GOTHARD, JJ.
GOTHARD, Judge.
On November 2, 1989 the defendant, Mark Slay, was charged by grand jury indictment with five counts of criminal activity including aggravated rape in violation of LSA-R.S. 14:42. Also included in the indictment were charges of violations of LSA-R.S. 14:37, aggravated assault, LSA-R.S. 14:56 simple criminal damage to property, LSA-R.S. 14:45 simple kidnapping, and LSA-R.S. 14:27, 14:30 attempted murder. After a finding by a sanity commission that the defendant was legally sane and competent to assist his counsel at trial, he pled not guilty at his arraignment. The state elected to proceed to trial only on the aggravated rape charge. A twelve member jury unanimously found the defendant guilty of the charge of aggravated rape, and the trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. The defendant appeals his conviction and sentence assigning the following three errors for our review:
1. The trial court erred in denying appellant's motion for a mistrial premised upon the introduction of inadmissible evidence of other crimes.

*1186 2. The trial court erred in denying appellant's request for a mistrial premised upon the prosecutor's comment upon appellant's failure to testify.
3. Also assigned as error are any and all errors patent on the face of the record.
We affirm.

FACTS
The victim, a forty-year-old woman, closed up the Westbank bar where she was employed and left for home at about 1:30 a.m. on October 4, 1989. While she was stopped at a traffic light, a car approached and bumped into the rear of her car. The victim was not alarmed since the impact was too light to cause damage to her vehicle and she assumed it was accidental. However, when the other vehicle continued to follow the victim's car into the Harvey Tunnel and attempted to force it to collide with the side of the tunnel, the victim became convinced the driver of the second vehicle intended harm. The victim tried to escape by driving to a nearby restaurant where police officers were likely to be found. Unfortunately, while enroute her car was forced off the road by her attacker. The victim's car came to rest in a parking lot where it stalled and could not be restarted because of an overheated engine.
The male driver of the second vehicle, subsequently identified as the defendant, jumped out of his car and ran over to the victim's car. He demanded the victim get out. When she refused the defendant took a screwdriver from his car and used it to break the window on the driver's side of the victim's car. After reaching in through the broken window and unlocking the car door, the assailant opened the door and pulled the victim from the car by her hair. He jabbed the screwdriver at her stomach area several times and then subdued her by holding the screwdriver to her neck. The assailant forced the victim into his vehicle and drove off, telling her, "I have to figure out where to take you to do what I want and kill you." Upon reaching an empty parking lot, the assailant parked his car and ordered the victim to disrobe.
After the rape occurred, the assailant once again told the victim that he was going to kill her to prevent her from reporting the incident to the police. Although the story was pure fabrication, the victim apparently convinced the defendant that she was wanted by the police and therefore could not report the rape to authorities without being arrested herself. She ultimately talked her assailant into driving her home, where she got out of the man's vehicle and went inside. The rape was reported immediately to the police, who responded and commenced their investigation. During the course of the actual incident that evening, the victim was able to clearly observe her assailant and his vehicle several times particularly on an occasion when the assailant turned on the dome light in his car. She conveyed the details of her observations to the police.
Some two weeks after the rape, the victim was taken to the parking lot of a Westbank restaurant to meet with police officers who were investigating the incident. The officers asked her to look around the parking lot to see if she recognized anything. She complied and spotted an automobile which she identified as belonging to her assailant. The victim was then taken to police headquarters, where the driver of the automobile was being detained for investigative purposes. Police officers presented the victim with a photographic line-up of five males fitting her assailant's description. She reviewed the photographs and then positively identified the photograph of the defendant, who was also the driver of the vehicle she had identified earlier.
By his first assignment of error the defendant asserts that the trial court erred in denying his motion for mistrial based on the introduction of inadmissible evidence of other crimes.
During a narrative of events given by the victim at trial, she stated that she was afraid for her life because the defendant told her he had just gotten out of jail and might have to go back if he didn't kill her. Also during trial, the physician who examined *1187 the victim immediately after the rape testified that the victim disclosed to her the defendant's statement about his recent release from prison. On both occasions defense counsel objected and requested a mistrial. Both requests were denied by the trial court.
LSA-C.Cr.P. art 770(2) mandates a mistrial when reference is made by the prosecutor of "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." Defendant argues that, although the comments were made by the victim and her physician, they are imputed to the state.
On the day of trial defendant filed a motion in limine to restrain the state from "eliciting, presenting or in anyway alluding to defendant's prior conviction record." The trial court reserved ruling. As previously stated, reference was made to defendant's prison record on direct examination by the state. Consequently, the defendant argues references must be imputed to the state mandating a mistrial.
Defendant's argument presumes the inadmissibility of the references. It is clear that article 770(2) is only applicable when the evidence is inadmissible. The admissibility of other crimes evidence at trial is governed by Article 404 B(1) of the Louisiana Code of Evidence:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
That article replaces the ambiguous concept of res gestae, formerly embodied in LSA-R.S. 15:447-448 by use of the phrase "when it relates to conduct which constitutes an integral part of the act or transaction..." Additionally LSA-C.E. art 801 D(4)[1] excludes such statements from the definition of hearsay.
Statements made by a rapist during the course of the assault on his victim with regard to his prior jail time, were held admissible as part of res gestae under prior law. See State v. Wilson, 363 So.2d 481 (La.1978); State v. Johnson, 443 So.2d 766 (La.App. 3rd Cir.1983), writ den. 445 So.2d 451 (La.1984). We believe they are also admissible under LSA-C.E. art 404 B(1). The statement was made during the commission of a criminal act of violence and are relevant to the victim's assessment of the seriousness of defendant's threat to kill her. They relate to conduct which constitute an integral part of the act. Thus, we believe the trial court correctly denied defendant's motion for mistrial.
In his second assignment of error, the defendant contends that the prosecutor made an impermissible reference during rebuttal argument to the defendant's failure to testify in his own defense. The trial court, according to the defendant, thus committed reversible error by denying the defense's motion for a mistrial premised on La.C.Cr.P. art. 770(3).[2] During rebuttal, the prosecutor commented that the evidence presented by the state against the defendant was "uncontradicted". The defendant argues that this statement constituted a reference to the defendant's failure to testify because the defendant was the only witness who could have offered evidence *1188 to contradict that presented by the state.
A defendant's right against self-incrimination is guaranteed by the Fifth Amendment of the United States Constitution. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Article 770(3) of the Louisiana Code of Criminal Procedure recognizes that constitutional guarantee against self-incrimination and safeguards a defendant from unfavorable inferences which might otherwise be drawn from the defendant's silence at trial. State v. Fullilove, 389 So.2d 1282 (La.1980). That article prohibits both direct and indirect references to the defendant's failure to testify. The Louisiana Supreme Court has held that, "where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so", the prosecutor's argument does not constitute an indirect reference to the defendant's failure to testify. State v. Johnson, 541 So.2d 818, 822 (La.1989). However, where the defendant is the only witness capable of rebutting the state's evidence, a reference to the state's evidence as being uncontroverted draws the jury's attention to the defendant's failure to testify and therefore requires a mistrial. State v. Johnson, supra. See also State v. Sprinkle, 439 So.2d 1230 (La.App. 5th Cir.1983).
The reference here challenged by the defendant reflected the prosecutor's appreciation of the overall evidence presented in the case and did not focus on the defendant's failure to testify at trial. In his closing argument to the jury, defense counsel suggested various factual scenarios reflecting the defendant's innocence. Among these scenarios were that a consensual encounter rather than a rape occurred and that the entire incident actually involved a dispute between the victim and a male with whom she shared a house, allegedly to reduce living expenses. Considering the alternative versions of the incident set forth by the defendant, the prosecutor's remark characterizing the state's evidence as uncontradicted intended to draw the jury's attention to the defense's failure to produce any witnesses or evidence establishing factual support for these alleged scenarios. The prosecutor pointed out to the jury that the defense possessed subpoena authority equal to that of the state. And yet, as noted by the prosecutor, the defendant did not produce any witnesses to substantiate that the relationship between the victim and the defendant was ever amicable or that a dispute between the victim and male occupant of her residence ever existed. The prosecutor merely asked the jury to compare the state's evidence with the defendant's lack of evidence, which is permissible under LSA-C.Cr.P. art. 774. The trial judge therefore properly denied the defendant's motion for a mistrial. State v. Chairs, 493 So.2d 202 (La.App. 5th Cir. 1986).
This assignment of error lacks merit.
As requested by defendant, the record was reviewed for errors patent on its face. None were found. Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED
NOTES
[1] (4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
[2] Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

. . .
(3) The failure of the defendant to testify in his own defense; ...