466 So.2d 642 (1985)
STATE of Louisiana
v.
Lester CHAIRS.
No. 84-KA-432.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
John M. Mamoulides, Dist. Atty., James Maxwell, Dorothy A. Pendergast, Louise Korns, Asst. Dist. Attys., Gretna, of counsel, for plaintiff-appellee.
John H. Craft, Staff Appellate Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, CURRAULT and GRISBAUM, JJ.
KLIEBERT, Judge.
Defendant, Lester Chairs, was charged by bill of information with armed robbery, *643 in violation of Louisiana Revised Statutes 14:64, and attempted first degree murder, in violation of Louisiana Revised Statutes 14:27 and 14:30. The defendant pled not guilty to the charges. After a preliminary examination the court found probable cause to hold the defendant for trial. After hearings on preliminary discovery motions and a motion to suppress, the defendant was tried by a twelve member jury on May 15 and 16, 1984 and found guilty as charged on both counts.
The trial court sentenced the defendant to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence for the armed robbery conviction and fifty years at hard labor for the attempted first degree murder without benefit of parole, probation or suspension of sentence, with the sentences to run consecutively with each other, and other sentences for armed robbery and aggravated crime against nature imposed for previous convictions of the defendant. The defendant now appeals from these convictions and sentences.
On May 15, 1983, a black male entered a Time Saver Store located on Jefferson Highway in Jefferson Parish. The male walked up to the counter and requested a pack of cigarettes from Ronald Lodriguss, the assistant manager of the store who was the only employee on duty that night. As Lodriguss rang up the purchase, the black male pulled a gun out of his pants and said "Put your money in the bag." A customer then approached the register and the black male slipped the gun back into his shirt and told Lodriguss to "go ahead and wait on him." Lodriguss then handed a grocery sack with approximately $80.00 to $100.00 in it to the black male, who said "stay cool." The black male then backed towards the door and ran out into the rain down Jefferson Highway towards Causeway Boulevard. Lodriguss immediately called the Jefferson Parish Sheriff's Office, giving them a description of the black male as being 6' 1" tall, with sad eyes, a moustache and small goatee, wearing a green pullover shirt and bee-bop hat and carrying a snub-nose revolver.
At approximately the same time, Deputy Alton Quave of the Jefferson Parish Sheriff's Office was traveling up Jefferson Highway in his patrol car. Deputy Quave was off duty and returning with his wife from a family function. Deputy Quave had his police radio on and heard an all-points bulletin broadcasting an armed robbery which had just occurred at 4327 Jefferson Highway and a description of the perpetrator. As Deputy Quave continued driving up Jefferson Highway toward the Time Saver Store, he spotted a black male, matching the description of the armed robber, running down Jefferson Highway away from the Time Saver Store. Deputy Quave switched on his police lights, his siren, and his spotlights and pulled to a stop in front of a fried chicken outlet next to a firehouse. According to Quave's testimony, the black male subject was clearly visible in the spotlights, the street lights, and the business lights. Deputy Quave partially exited the patrol car, crouched behind the door, and ordered the suspect to stop. The suspect wheeled around, fired four shots in the direction of the patrol car, and then fled around the side of the firehouse.
Deputy Quave radioed for assistance and, during the course of the investigation at the scene, investigators found a spent pellet under one of the fire trucks located in the firehouse.
Detective Susan Miller contacted Detective William Lunsford, who was assigned to the Time Saver Store armed robbery involved here, and informed him that the description of a suspect Detective Lunsford was seeking matched the description of a suspect she was investigating for another crime. Miller identified her suspect as Lester Chairs. Detective Lunsford prepared a photo lineup and showed it to Ronald Lodriguss, who identified the defendant as the man who committed the armed robbery. Detective Lunsford prepared another photo lineup and showed it to Deputy Quave, who identified the defendant as the man who shot at him. Ballistics tests determined *644 that the pellet found on the firehouse floor was fired from a gun found as a result of a search warrant in the house where the defendant habitually resided.
The defendant originally cited three assignments of error. However, the assignments of error relative to the defendant's motion to suppress identification testimony and the excessiveness of the sentences were not briefed and therefore are considered abandoned. Uniform Rules of CourtCourts of Appeal, Rule 2-12.4; State v. Dirden, 430 So.2d 798 (5th Cir. 1983); State v. Smith, 452 So.2d 251 (5th Cir.1984).
In the only remaining assignment of error originally cited, the defendant contends the trial court erred in denying his motion to suppress evidence obtained from the residence of Margaret and Henry Chairs during a search under a judge-ordered search warrant.
The search warrant was obtained and the subsequent search and seizure were actually made in connection with another crime. The defendant contends that the affidavit used to obtain the search warrant did not establish a connection between the items to be seized and the house searched pursuant to the search warrant.
La.C.Cr.P. Article 162 provides:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search and seizure."
The search warrant was issued upon the affidavit of Detective Susan Miller of the Jefferson Parish Sheriff's Office. The affidavit, dated May 20, 1983, amongst others, in substance set forth the following facts:
(1) On May 5, 1983, a black male attacked a white female, committing an armed robbery and an aggravated crime against nature. The victim reported the incident to the Sheriff's Office and described her attacker's physical appearance, the clothing which the attacker wore at the time of the attack (a cream colored shirt with a design on one side of the same with front buttons and collar, dark pants, dark "tennis" type shoes, and a "garden" type glove worn on his left hand) and the weapon used to effect the crime (a blue steel revolver);
(2) On May 19, 1983, the victim spotted the perpetrator cutting grass on Claiborne Drive in Metairie and called the Sheriff's Office to report his location;
(3) Detective Miller proceeded to the location given and arrested the suspect, who was identified as Lester Chairs;
(4) Chairs informed Miller that he resided most of the time with his father and step-mother, Henry and Margaret Chairs, at 560 Brown Street in Jefferson;
(5) A check of the municipal directory revealed that the listing of 560 Brown Street was registered to a Margaret Chairs;
(6) Detective Miller obtained a color photograph of Lester Chairs and arranged it in a photographic lineup. The lineup was displayed to the victim who identified the photograph of Lester Chairs as the suspect of the offense which occurred on May 5, 1983;
(7) Lester Chairs was placed under arrest, and advised of his constitutional rights and booked with R.S. 14:89Aggravated Crime Against Nature, R.S. 14:27:42Attempted Aggravated Rape, and R.S. 14:27:64Attempted Armed Robbery;
(8) It is for the above listed reasons that Detective Miller requested that a search warrant be issued for the residence of 560 Brown Street, Jefferson, Louisiana.
As a result of the search of the premises 560 Brown Street, conducted pursuant to the search warrant, a .38 calibre revolver and five spent casings, together with other *645 items not involved here, were seized. The revolver seized was used as evidence in the instant case, since the ballistics tests confirmed that said revolver was the weapon used to fire the bullet which was found on the floor of the firehouse where the shooting took place after the robbery at the Time Saver Store.
A search warrant should be tested and interpreted by courts in a common sense and realistic manner, without technical requirements of elaborate specificity. The resolution of doubtful or marginal cases should be determined by according preference to warrants, so as to encourage police officers to submit evidence to a judicial officer before acting. State v. Huffman, 419 So.2d 458 (La.1982); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1963).
On appeal, defense counsel argues the affidavit supporting the application for a search warrant fails to demonstrate probable cause to believe that contraband or other evidence could be found in the premises to be searched, hence, the defendant's motion to suppress the evidence (the handgun) should have been granted.
The facts in the affidavit in the present case, when reviewed in a common sense and nontechnical manner give rise to a reasonable belief that the defendant's usual place of residence is the logical place to search for evidence of criminal activity, including the weapon used in the commission of the crime, and the defendant's personal clothes worn during the commission of the crime. Consequently, we find no merit to this assignment of error.
Although not assigned as an assignment of error, the defendant also argues that the evidence adduced at the trial failed to prove that the defendant had the specific intent to kill or inflict great bodily harm when he fired his weapon in the direction of Deputy Quave.
When addressing the sufficiency of evidence in State v. Wright, 445 So.2d 1198 (La.1984), the Supreme Court at page 1201 set forth the following guidelines:
"... The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Where circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that: `Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.'
This Court has recognized that R.S. 15:438 is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Austin, 399 So.2d 158 (La.1981). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. R.S. 15:438 provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict...."
In the instant case, the defendant was convicted of attempted first degree murder. R.S. 14:30 provides in pertinent part:
"First degree murder is the killing of a human being:
* * * * * *
(1) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
* * * * * *

*646 For the purposes of Paragraph (2) herein, the term peace officer is defined to include any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, attorney general, assistant attorney general, attorney general's investigator, district attorney, assistant district attorney, or district attorney's investigator."
R.S. 14:27 provides in pertinent part:
"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
Therefore, the gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Jarman, 445 So.2d 1184, 1189 (La.1984); State v. Huizar, 414 So.2d 741, 746 (La.1982); State v. Butler, 322 So.2d 189 (La.1975).
The evidence overwhelmingly showed that the defendant both robbed the store and fired shots at Deputy Quave. The defendant does not argue otherwise.
Defense counsel argues, however, that the evidence offered by the state did not prove beyond a reasonable doubt that the defendant fired the shots with the specific intent to kill or inflict great bodily harm upon Deputy Quave. Defense counsel contends that it is just as likely that the shots were intended to frighten Quave into inaction.
La.R.S. 14:10 defines specific intent as follows:
"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
La.R.S. 15:445 further provides:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
Louisiana courts have long accepted the proposition that specific intent, being a state of mind, need not be proven as a fact, but may be inferred from the circumstances of the transactions and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Boyer, 406 So.2d 143 (La.1981).
When circumstantial evidence is used to show specific intent, R.S. 15:438 should be consulted, as it provides an evidentiary guideline for a jury when considering circumstantial evidence. Exclusion of every reasonable hypothesis of innocence is a component of the more comprehensive reasonable doubt standard. State v. Wright, supra.
The evidence shows that one of the projectiles from the revolver which the defendant shot at Deputy Quave struck the door of the fire station approximately fifteen feet from where Quave was concealed. Had the defendant fired only one shot at Quave, his argument that he fired only to frighten Quave might have some merit. However, the defendant fired four shots at the deputy.
Therefore, our review of the entire record convinces us that, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that the defendant fired four shots at Deputy Quave with the specific intent to kill or to inflict great bodily harm on a police officer. Under the facts presented, the state proved beyond a reasonable doubt that Chairs was guilty of attempted first degree murder of a police officer. We also reach this same conclusion as to the conviction for armed *647 robbery. We therefore affirm the conviction and sentence.
AFFIRMED.