552 So.2d 1365 (1989)
STATE of Louisiana
v.
Luis E. MARTINEZ.
No. 89-KA-316.
Court of Appeal of Louisiana, Fifth Circuit.
November 15, 1989.
*1366 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Ralph L. Barnett, Gretna, for defendant-appellant.
Before CHEHARDY, BOWES and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Luis Martinez was charged in a Jefferson Parish bill of information with possession of over two hundred grams of cocaine in violation of R.S. 40:967(F)(2). Following the denial of his Motion to Suppress Evidence, Martinez withdrew his not guilty plea and pled guilty to the reduced charge of possession with intent to distribute cocaine in violation of R.S. 40:967(B)(1), reserving his right to appeal under State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to imprisonment at hard labor for a term of ten years, with credit for time served. This appeal followed and although no brief has been filed on behalf of the defendant, we have reviewed the entire record for errors patent and the suppression hearing for any violation of the defendant's rights.

FACTS
The arrest of Luis Martinez culminated a joint drug enforcement effort between the New Orleans Police Department (NOPD) and the Jefferson Parish Sheriff's Office (JPSO). The initial investigation of this matter began when a confidential informant advised NOPD that, on November 2, 1986, a black male driving a red Corvette would purchase cocaine at a certain residence on Woodmere Boulevard in Harvey. Officers from the General Assignments Division of NOPD were detailed to maintain surveillance of the residence described by the informant. At approximately 1:30 a.m. on November 2, 1986, a red Corvette arrived at the residence on Woodmere Boulevard. A black male got out of the automobile and entered the residence. Shortly thereafter, a male later identified as Luis Martinez came out of the residence and drove away in a silver Bronco. The officers followed the Bronco to an apartment complex on Manhattan Boulevard, where Martinez parked and went into one of the apartments. After emerging from the apartment, Martinez drove back to the Woodmere Boulevard residence and went inside. Apparently, the black male suspect waited at the Woodmere Boulevard residence while Martinez went to the Manhattan Boulevard apartment. Within a few minutes of Martinez's return to the residence, the black male left the house and drove away. After the red Corvette entered Orleans Parish, NOPD officers executed a traffic stop. They found five ounces of cocaine on the driver's person.
NOPD received further information from a confidential informant that Martinez would soon be driving to Miami to purchase a large quantity of cocaine to sell in Jefferson Parish. At that point, NOPD representatives contacted the Jefferson Parish Sheriff's Office and reported the November 2, 1986 incident, as well as the information about Martinez's upcoming travel to Miami. The two police departments decided to conduct a joint surveillance and enforcement operation. On November 4, 1986, officers from NOPD and JPSO set up surveillance of the Woodmere Boulevard residence and the Manhattan Boulevard apartment. NOPD officers observed Martinez driving *1367 his silver Bronco toward Florida and followed him to the Mississippi-Alabama state line, where surveillance was broken off.
On November 12, 1986, the silver Bronco, driven by Martinez, was spotted on the Westbank of Jefferson Parish. Under the surveillance of police officers Martinez drove to the Manhattan Boulevard apartment. He went into the apartment carrying what appeared to be a green suitcase. Approximately 20 minutes later, Martinez left the apartment without the suitcase and drove away. As Martinez was driving toward his Woodmere Boulevard residence, JPSO officers effected a traffic stop of his vehicle. Martinez denied any knowledge of the Manhattan Boulevard apartment. He claimed that he was enroute to his residence on Woodmere Boulevard.
After Martinez was stopped, Detective Thomas Pritchett of the JPSO Narcotics Division executed an application for a warrant to search the Manhattan Boulevard apartment. Detective Pritchett's application contained his affidavit setting forth the details of the November 2, 1986 incident resulting in the discovery of five ounces of cocaine and the information obtained about Martinez's plans to purchase cocaine in Miami. A trial judge reviewed the application and issued a search warrant to Detective Pritchett on the afternoon of November 12, 1986. When the police officers entered the Manhattan Boulevard apartment, they found the rooms completely barren of furniture, clothing or cooking utensils. They discovered a loaded 20-gauge shotgun, which the officers left in the apartment after a records check revealed that the weapon was not stolen. In various other locations in the apartment, the officers found and seized three weight scales and some boxes of plastic baggies. Upon searching the closet where the central air conditioning and heating unit was located, the detectives discovered and seized a green shopping bag containing a number of smaller plastic bags filled with cocaine.
After the cocaine was found, the police officers formally arrested Martinez and advised him of his rights. They asked Martinez if he would consent to a search of his Woodmere Boulevard residence and a search of certain business premises allegedly owned by Martinez in Kenner. Martinez executed a written consent for the searches requested by the officers. At the Woodmere Boulevard premises, the police discovered a copy of the agreement pursuant to which the Manhattan Boulevard apartment was leased to Martinez. No evidence was discovered or seized at the Kenner business location. Upon completion of these searches, the defendant was transported to JPSO headquarters for booking.
Thomas Pritchett and Tim Miller, officers assigned to the Narcotics Division of JPSO, testified at the hearing on the motion to suppress. Their testimony establishes that the search of the Manhattan Boulevard apartment was conducted pursuant to a warrant issued on the afternoon of November 12, 1986, and that the Woodmere Boulevard residence and Kenner business premises were subsequently searched after the defendant executed a consent form. Thus the defendant failed to make an initial showing that a warrantless search occurred, as alleged in the motion to suppress. However, while the testimony at the suppression hearing primarily focused on the warrant application, the warrant and the consent form, none of these documents were introduced into evidence. During the course of his testimony, Detective Pritchett identified State Exhibit Numbers 1 and 2 as the search warrant application and the search warrant, respectively. He further identified State Exhibit Number 3 as the consent to search form executed by the defendant. After their identification, however, these exhibits were not offered as evidence by the state. The critical testimony adduced at the suppression hearing thus centers around exhibits not introduced in evidence.
On appeal, this court is unable to consider the application for the search warrant, the search warrant or the executed consent to search forms because those documents *1368 were not introduced into evidence during the suppression hearing and are not part of the record in this case. Appellate courts have no authority to receive or review evidence not contained in the trial court record. State v. Oubichon, 422 So.2d 1140 (La.1982); State v. Dean, 528 So.2d 679 (La.App. 2nd Cir.1988). The issue to be resolved is therefore the proper appellate disposition of the trial court's ruling which relied on exhibits not introduced into evidence.
In denying Martinez's motion to suppress, the trial judge ruled that the search warrant issued to Detective Pritchett was valid and that there was probable cause for the issuance of the warrant. The trial court did not enter any ruling with respect to evidence seized during the consent searches, namely the lease agreement found at the Woodmere Boulevard residence. The testimony of Detective Pritchett supports the trial court's ruling that the search warrant was valid.
The existence of probable cause for a search warrant is to be determined by the "totality of the circumstances" standard announced in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In State v. Chairs, 466 So.2d 642 (La.App. 5th Cir.1985), this court stated:
A search warrant should be tested and interpreted by courts in a common sense and realistic manner, without technical requirements of elaborate specificity. The resolution of doubtful or marginal cases should be determined by according preference to warrants, so as to encourage police officers to submit evidence to a judicial officer before acting.
Id. at 645.
Moreover, an affidavit sworn in support of a search warrant is presumed valid. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); State v. Brannon, 414 So.2d 335 (La.1982); State v. Shrader, 514 So.2d 213 (La.App. 5th Cir. 1987). Hearsay may be used to establish probable cause in a search warrant application as long as the application discloses sufficient facts to demonstrate that the hearsay information and its source are reliable. State v. Duncan, 420 So.2d 1105 (La.1982). In this case, Detective Pritchett obtained the information for the warrant application from the NOPD, a reliable source. Finally, even assuming some defect in the warrant application is sufficient to invalidate the search warrant, Detective Pritchett and his fellow officers acted in good faith in executing the warrant. Evidence seized during such a "good faith" search is not subject to suppression. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); State v. Shrader, supra.
The lease agreement seized from the Woodmere residence was found during a consent search of those premises. At the hearing on the motion to suppress, Detective Pritchett identified the consent to search form executed by Martinez. Detective Pritchett further testified that Martinez executed the consent voluntarily, and the record is devoid of any evidence to the contrary.
When the state relies upon consent to justify a search, the state has the burden of proving that the consent was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Pautard, 485 So.2d 909 (La.1986); State v. Cathey, 493 So.2d 842 (La.App. 5th Cir.1986), writ denied, 500 So.2d 419 (La.1987) cert. denied, 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987). Consent is a factual issue which may be determined by the credibility of conflicting witnesses as well as the surrounding circumstances. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Cathey, supra; State v. Ortiz, 520 So.2d 1200 (La.App. 5th Cir.1988). The trial judge's factual determination on the voluntariness of the consent is afforded great weight on appeal. State v. Edwards, 434 So.2d 395 (La.1983). Although the only evidence bearing on the consent issue, namely, the testimony of Detective Pritchett, *1369 reflects that Martinez voluntarily consented to the search of his residence and business premises, the consent issue was not addressed in the ruling denying the motion to suppress.
The current posture of this case is important when considering the appropriate appellate resolution of the matter. As discussed, none of the exhibits used at the hearing on the motion to suppress were introduced into evidence, nor did the trial court enter any ruling on the voluntariness of Nartinez's consent to search his residence and business. However, the testimony adduced at the hearing on the suppression motion clearly supports the validity of the search warrant at issue and the voluntariness of the consent at issue. Considering the record before us and the fact that the defendant has not filed a brief, we find no error in the ruling of the trial judge in denying the motion to suppress. In all other respects, the proceedings against Martinez were properly conducted and we find no errors patent. Accordingly, the defendant's guilty plea and sentence are affirmed.
AFFIRMED.