|, GAUDIN, Judge.
Alex “Travis” Sanders was convicted of attempted first degree murder of St. John Parish police officer Richard Dubus, Jr. and sentenced on December 2, 1998 to 30 years at hard labor. Sanders admitted shooting at the marked police vehicle Du- *1011 bus was in but he said he meant only to shoot at the automobile and not specifically at the officer.
Finding no reversible mistake in Sanders’ assignments of error, we affirm his conviction and sentence.
On appeal, Sanders assigns these 40 th Judicial District Court errors:
(1) his confession was illegally obtained,
(2) four jurors were improperly seated,
(3) the evidence was insufficient, and
(4) the 30-year sentence was excessive.
BACKGROUND
On September 1, 1994, at approximately 3:20 a.m., Dubus was on patrol driving his police car in a housing authority area in St. John Parish. Seven shots were fired, one of the bullets striking the steering wheel. The driver’s side window was shattered. One bullet hit the chrome molding of the Drear window while another struck the car above the driver’s side door. Photographs in evidence show the damage to the police unit.
While conducting door-to-door interviews, Captain Robert Hay knocked on Sanders’ front door. Because Sanders and his mother, Paula Sanders, acted in a suspicious manner while Captain Hay was questioning them and the two other Sanders children, Sanders and his mother were taken to the police station for further questioning.
As a result of the questioning, a search warrant was issued for the Sanders residence. Eight grams of cocaine were discovered. Sanders eventually confessed. He was found guilty as charged by a 12-person jury.
ASSIGNMENT NO. 1
Prior to trial, Sanders filed a motion to suppress his confession, which was denied. He argued then and now that he was under duress and that he confessed only to prevent his mother from being charged with possession of cocaine. Sanders testified that police officers told him that Mrs. Sanders would be charged unless he confessed to the “shooting.”
At the suppression hearing, three police officers, two of them black as is Sanders, testified that Sanders was not threatened about the possibility of his mother being arrested and going to jail.
The officers testified that Miranda rights were explained and apparently understood. Sanders and his mother signed three waiver forms before Sanders confessed.
Mrs. Sanders testified that she did tell her son not to admit to anything he did not do. Mrs. Sanders said she could neither read nor write.
Dr. Thomas Hannie, a clinical psychologist, was appointed to evaluate |3Mrs. Sanders’ competency to advise her son. Dr. Hannie said that Mrs. Sanders has an IQ of 67, which is near the top of the mild retardation range, but that she had adequate intellectual ability to understand Miranda rights after having them related to her and adequate ability to communicate with and advise her son.
Dr. Harold M. Ginzburg, a forensic psychiatrist, testified at a sanity hearing that Sanders was mildly retarded but that he understood the charge against him and could assist in his defense. Sanders had gone to the seventh grade. Dr. Ginzburg said he could read at the third grade level.
At no time during the suppression hearing did either Sanders or his mother say that Sanders was threatened with physical violence.
Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Credibility is not reweighed on appeal. See State v. Richards, 713 So.2d 514 (La.App. 5 Cir.1998), writs denied at 726 So.2d 27 (La.1998).
*1012 Here, the trial judge accepted the testimony of the three police officers. The trial judge found that Sanders was not threatened or under duress and that his confession was freely and voluntarily made after meaningful consultation with his mother. During the police station questioning and before Sanders confessed, he and Mrs. Sanders were allowed to converse alone in a side room.
From the record, it appears that cocaine charges were filed against Mrs. Sanders and they were pending when this case was tried.
The denial of the motion to suppress was not reversible error.
| ¿ASSIGNMENT NO. 2
Sanders contends that his challenges for cause of jurors Jon Kinney, Ranney Wilson, Billy Lambert and Jeanette Butler were wrongly denied by the trial judge. We find no reversible error.
Kinney was objected to by Sanders because he had worked 12 hours the previous night and was tired and also because Kinney indicated he would be concerned if Sanders did not take the witness stand and testify.
Kinney did not fall asleep during the court proceedings. He said, prior to being selected, that if he was picked he would have a full night’s sleep before the trial.
Asked if he would hold anything against a defendant who did not testify, Kinney said: “I’d like to say yeah, I probably wouldn’t but — .”
“You’d wonder about it, right?” Kinney was then asked. Kinney replied: “Yes I would. I sure would. Especially if I was charged with something like this. Sure would.”
The following exchange took place between the trial judge and Kinney (and another juror):
“Mr. Kinney, Miss Bourgeois, you all said you all would wonder about his not taking the stand. I just read you a charge, that I will read you just before you went into the jury room, saying this is the law, the defendant does not have to prove that he is innocent. The fact that he does not take the stand must be totally ignored by you. Can all of you, especially Miss Bourgeois and Mr. Kinney, can all of you take that as the law? If I told you — you were the judge of this case, you find the facts and apply this law, can you do that?
Mr. Kinney.”
Mr. Kinney:
“Probably so.”
| ¡¡The Court:
“Pardon?”
Mr. Kinney:
“Probably so.”
The Court:
“If I told you you had to do that would you take it upon yourself as your civic duty as a juror to not consider the fact that he does not take the stand and look at the elements that must be proven, can you do that?”
Mr. Kinney:
“Yes, yes.”
It appears from the record that Kinney would be able to (and apparently did) overcome his lack of sleep and that the trial judge did not err in finding, upon further questioning, that Kinney could be fair and impartial.
Wilson was objected to because of his prior service with the sheriffs department, his having heard about the shooting “on the street” and his previous experience as a victim of crime. Wilson had worked for the sheriffs department from 1976 through 1984 and as a result, he knew many members of law enforcement and the district attorney’s office.
The trial judge questioned Wilson about his ability to judge the credibility of police officers and Wilson stated, “Yes, I could. I know the difference between right and *1013 wrong, I can judge that.” When asked about his ties to law enforcement, Wilson stated that, “I have close ties but it wouldn’t affect my decisions.”
Based on Wilson’s statements and the fact that he ended his employment with the sheriffs office 10 years prior to the trial, the trial judge did not abuse her discretion in denying the defendant’s cause challenge for | fithis reason.
Wilson also stated that he had heard about the shooting “on the street,” but he stated that “I don’t know who was involved or what happened.” It is well settled that the mere fact that a prospective juror has knowledge of facts surrounding the occurrence of the offense does not necessarily make him subject to a challenge for cause. See State v. Sonnier, 379 So.2d 1336 (La.1979).
Wilson was also asked whether he or any of his close friends or relatives had been the victims of a crime, and he said:
“Numerous. Some very violent crimes with my mother, 1984. Recently, I’ve been vandalized in the last six weeks, eight weeks, twice. And many occasions in the past been the victim of vandalism and burglaries.”
When the trial court asked if those who had been the victim of crime could be fair and impartial, Wilson answered, “Yes.”
If a prospective juror is able to declare to the trial court’s reasonable satisfaction that he could render an impartial verdict according to the law and evidence, it is the trial court’s duty to deny the challenge for cause. See State v. Claiborne, 397 So.2d 486 (La.1981); also, State v. Alberto, 665 So.2d 614 (La.App. 5 Cir.1995), writs denied at 670 So.2d 1237, (La.1996). Considering Wilson’s testimony as a whole, and the trial judge’s wide discretion, it appears that the court did not err in finding that Wilson would act impartially-
Lambert said that he knew socially both the prosecutor and one of the defense attorneys. He stated that he served on the utility board with the husband of one of the potential witnesses and that he lived in the same subdivision with the family of one of the detectives. Lambert also said that he j7was social friends with many of the individuals in the sheriffs and district attorney’s offices.
Although personal connections and relationships with law enforcement personnel do not, by themselves, disqualify prospective jurors for cause, such associations and relationships are subject to careful scrutiny. See State v. Alexander, 620 So.2d 1166 (La.1998).
When the trial court questioned Lambert about the effect that his relationships with members of the district attorney’s office would have, Lambert stated, “No, it wouldn’t affect me.”
As is the case with potential jurors Kinney and Wilson, the trial judge’s further questioning led her to conclude that Lambert could be fair and impartial. We cannot say that Lambert’s seating was error.
Concerning Butler, the record shows that the prosecutor, not Sanders’ attorney, challenged this juror and that the defense did not object. In any event, Butler was chosen as an alternate only and did not deliberate.
The seating of jurors Kinney, Wilson and Lambert was within the trial judge’s discretion. Trial judges have a duty to question and possibly rehabilitate jurors who indicate some uncertainty about the law and its application to the case about to be tried. Here, the trial judge’s inquiries gave her reason to deny the challenges for cause.
ASSIGNMENT NO. 3
In this assignment of error, Sanders says the evidence was insufficient to prove beyond a reasonable doubt that he had the specific intent to kill the deputy. Specific criminal intent, a required element of this crime, does not have to be proven as fact, but may be inferred from the circumstances and | ^actions of the defen *1014 dant. State v. Boyer, 406 So.2d 143 (La.1981), and many other cases with similar holdings.
The firing of seven shots at the police car, several of the bullets almost hitting the police officer, without much doubt proves specific intent to kill. See State v. Chairs, 466 So.2d 642 (La.App. 5 Cir.1985).
ASSIGNMENT NO. 4
Considering the facts and circumstances of this case along with Sanders’ extensive juvenile record, which includes battery of a teacher and a separate three-count charge of battery, the 30-year sentence was not constitutionally excessive.
ERROR PATENT
The sentence imposed on Sanders is illegally lenient as the trial judge failed to specify that the sentence be served without benefit of probation, parole, or suspension as required by LSA-R.S. 14:27D(1). However, the state neither moved for reconsideration of sentence in the trial court nor did it object at the time of sentencing. When the state fails to take either of these actions, an appellate court is precluded from correcting an illegally lenient sentence.
CONVICTION AND SENTENCE AFFIRMED.