568 So.2d 175 (1990)
STATE of Louisiana, Appellee,
v.
Albert L. KIDD, Appellant.
No. 21,811-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*177 Davis & Singleton by S.P. Davis, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Henry N. Brown, Jr., Dist. Atty., James M. Bullers, Asst. Dist. Atty., Benton, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
NORRIS, Judge.
The defendant, Albert L. Kidd, was charged by bill of information with distribution of cocaine, a Schedule II Controlled Dangerous Substance. LSA-R.S. 40:967 A. He had a jury trial, was found guilty as charged and later was sentenced to 15 years at hard labor. He now appeals, originally advancing six assignments of error. One of these, neither argued nor briefed, is abandoned. URCA-Rule 2-12.4; State v. Williams, 338 So.2d 672 (La.1976). We find no reversible error and therefore affirm the conviction and sentence.

Facts
The case arose from a controlled drug sale at Riverwood Apartments in Bossier City. In late 1988 the Bossier Parish Sheriff's Office was receiving complaints about drug activity at the complex. They launched an investigation jointly with the Caddo Parish Sheriff's Office. Deputies Tipton and Luce, who headed the investigation, set up a confidential informant (known to everyone only as "Roxanne") in a vacant unit at Riverwood in early December. At this time one of the suspects was a man named Willie Brewer, who lived in the apartments. Brewer was originally a codefendant with Kidd but he entered a plea bargain and testified for the state at Kidd's trial. Dep. Luce's plan was for Roxanne to get in contact with Brewer about buying cocaine. After winning his confidence, Roxanne was to introduce him to an undercover agent, Dep. Annette Ansley, posing as Roxanne's friend who wanted to buy cocaine. Dep. Ansley was to be wired with an electronic bug which Deps. Luce and Tipton were to monitor; the monitor was also equipped with a tape recorder. Roxanne's apartment was to be the situs of the "buy." Deps. Luce and Tipton were to be stationed to observe people coming and going through the entrance of the complex. The visual and electronic surveillance would bolster Dep. Ansley's testimony that Willie Brewer had sold her drugs. In the first part of the month, Roxanne made contact with Brewer a few times, and on one occasion he sold her a small amount of cocaine.
The controlled sale, in which Albert Kidd was involved, occurred on December 27, 1988. Around 5:00 p.m. that day Brewer and some neighbors were standing around a car in front of his apartment and just across the street from Roxanne's. She waved to Brewer and walked up; he asked if she wanted some gin from the bottle he was holding. She said yes, but she wanted something to drink with it; she had a Coca Cola at her apartment, and asked him to come over. He agreed. Once inside, Roxanne asked him where she could buy some cocaine. She explained that she had a friend who would be getting off work from McDonald's soon and would want it. Brewer left and returned to his own apartment. A little while later, Roxanne knocked on his door to say her friend had arrived.
Brewer walked to Roxanne's apartment and met Ansley, whom he never suspected as an undercover agent. Ansley said she wanted "just a little" cocaine, two "20¢ bags." Brewer said if she would give him the money, he could get it for her. Ansley, however, did not want to send her money out with him. Brewer told him they could "come to the corner" with him, so all three left in Brewer's car. They drove around the block to his cousin Laverne Mitchell's apartment, where Kidd would be; his blue Volkswagen was not there so they did not *178 stop. Brewer drove to the apartment washateria, where he instructed Roxanne and Ansley to stay in the car. He called his cousin, Laverne Mitchell, who he thought would know Kidd's whereabouts, but there was no answer. He drove Roxanne and Ansley back to Roxanne's apartment before parking and returning to his own.
Within a few minutes Brewer spotted Kidd pulling up in the VW. He walked out and asked Kidd if he had any cocaine. Kidd said yes, bring him the money and he would supply it. Brewer replied that the girls did not want to send their money. Brewer walked over to Roxanne's apartment and Kidd followed close behind. Brewer introduced him as "Al."
Kidd asked Ansley, "You wanted two 20¢ bags?" Ansley had only $30 on her; when she offered this to Kidd, he threw up his hands and refused to take it. Brewer decided to chip in the balance and he handed the money to Kidd. Kidd accepted it and handed Brewer two baggies each containing a white, powdery substance. Brewer then handed the baggies to Ansley and Roxanne and asked them if they had any "points," or paraphernalia for shooting up cocaine. They said no; Brewer and Kidd left, with Brewer intending to fetch his points and return. When he returned, the girls were gone.
After Brewer and Kidd left, Ansley and Roxanne also left. Ansley drove to an appointed spot where she met Deps. Luce and Tipton and gave them the bags of suspected cocaine. Dep. Tipton ran a field test on the powder and determined it was cocaine. Dep. Luce initialed the packets in the other deputies' presence and later forwarded them to the crime lab, where the powder tested positive for cocaine. There was no evidence as to Roxanne's destination. At trial Deps. Tipton and Luce gave defense counsel her name but testified they did not know her whereabouts. The trial court issued an instanter subpoena for her but apparently it was never served. Other details from the trial will be developed in the discussion.
Kidd was arrested on January 19, 1989 and formally charged with distribution of cocaine on January 30. As noted, Brewer was charged as a codefendant but was allowed to plead to simple possession in exchange for his promise to testify at Kidd's trial. There was no agreement as to what sentence Brewer would receive and this record does not show what was actually imposed; simple possession carries a maximum of five years.
Kidd's trial was in April 1989 and resulted in a unanimous verdict of guilty. He was later sentenced to 15 years at hard labor.

Discussion: Discovery
By his third assignment Kidd urges the trial court erred in failing to require the state to produce, in response to a specific discovery request, the audio tape that Deps. Luce and Tipton made of the alleged drug sale. LSA-C.Cr.P. arts. 716 A, 722. Kidd argues the tape would have contained exculpatory evidence favorable to the defense and would have enabled him to impeach the state's witnesses.
Kidd's motion for discovery specifically sought any "relevant written or recorded confessions or statement of any nature," as well as "the substance of any oral statement which the state intends to offer in evidence made by the defendant." R.p.p. 12-13. In response the state answered, respectively, "None" and "See attached," but no oral statements were attached. R.p. 20. The motion was argued at a pretrial hearing and taken under advisement.
At trial Dep. Luce testified that although his monitor's radio receiver was working that day, the tape recorder was not. He attempted to listen to the tape after the transaction but it was not audible, so he and Dep. Tipton decided not to preserve it. He did not know what became of it, but he "probably" threw it away. R.p.p. 93, 128-129. Dep. Tipton testified that after the transaction, he attempted to listen to the tape; the first part of the tape was inaudible so he spot-checked and found no portion that was any better. Under department policy, the tape was either re-used or discarded, but he had no personal knowledge of what happened to that particular tape. *179 He was positive that it was not in his office. R.p.p. 170-175.
The defendant has a constitutional right to obtain, and to be protected against the state's suppression of, exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Johnson, 426 So.2d 95 (La. 1983). The state must also disclose evidence which impeaches the testimony of a witness, where the witness's credibility or reliability may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Cobb, 419 So.2d 1237 (La. 1982). If the subject matter of the defendant's request for evidence is material, or if a substantial basis for claiming materiality exists, then the state may discharge its duty by either furnishing the information to the defense or submitting it to the court for in camera inspection. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Cobb, supra.
Under LSA-C.Cr.P. art. 718 the defendant may inspect and copy tangible items, including documents, books and papers, which are within the state's control and are favorable to the defense. State v. Edwards, 420 So.2d 663 (La.1982); State v. Landry, 381 So.2d 462 (La.1980). The court may also conduct in camera inspections to determine the nature of the requested materials. State v. Cobb, supra; State v. Sylvester, 388 So.2d 1155 (La. 1980). The defendant will be denied an in camera inspection when the state denies possession of the specific information sought and the defense makes no contrary showing. State v. Cobb, supra; State v. Davenport, 399 So.2d 201 (La.1981). The state is not required to disclose or produce material or evidence that does not exist. State v. Thomas, 470 So.2d 413 (La.App. 3d Cir.1985); Brogdon v. Blackburn, 790 F.2d 1164 (5th Cir.1986), cert. denied 481 U.S. 1042, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987).
Both deputies testified that the tape was either thrown away or recorded over because the sound quality was so poor as to make it not probative. Contrary to the defense's argument, the record does not show or suggest that the state intentionally lost or discarded the tape in order to deprive Kidd of the use of exculpatory evidence at trial. The defense does not even allege what the evidence would be or how it would help him. Given these facts, the trial court was entitled to find that the tape was not in the state's possession and had not been deliberately destroyed. To require the state to produce the non-existent item of evidence would have been vain and useless. The trial court did not err in failing to compel discovery of the tape. This assignment does not present reversible error.

Hearsay evidence
By his fourth assignment Kidd urges the trial court deprived him of his constitutional right to a fair trial when it permitted Deps. Luce and Tipton to testify to what they heard over the transmitting device. He reiterates his complaint about the state's failure to produce the tape and seems to argue that if the tape was no good then the deputies' recollection of what the tape would contain was also improper at trial. He contends the trial court's action deprived him of a fair trial as guaranteed by LSA-Const. art. 1 § 16 (1974) and U.S.C.A. Const. amends. 5, 6 and 14.
On cross examination by defense counsel, Dep. Luce would not give the "exact words" he heard over the monitor, claiming he did not remember everything. He had, however, taken "adequate" notes of the conversation. On redirect by the prosecutor, Dep. Luce offered his recollection of the conversation "in detail from the beginning." R.p.p. 125, 133. In the course of his testimony he essentially corroborated what Dep. Ansley and Willie Brewer said. He did not claim to recall anyone's exact words. The defense objected to hearsay evidence; the court overruled it, holding the conversation was "things said or done" and admissible under LSA-C.E. art. 801 D(4). This article provides in part:
D. Statements which are not hearsay.
A statement is not hearsay if:
* * * * * *

*180 (4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
The conversations between persons who are transacting a drug sale fall under this article and are not hearsay. State v. Feeback, 414 So.2d 1229 (La.1982) (applying art. 801's predecessor, LSA-R.S. 15:448); State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989), writ denied 556 So.2d 1259 (La. 1990) (applying art. 801). The instant evidence was therefore admissible.
The defense further urges that the deputies' credibility was suspect. At one point, he argues, Dep. Luce said that only Ansley's voice came through clearly, but elsewhere he could recall what everyone was saying; Dep. Tipton testified the audio was "fading in and out"; and there were inconsistencies between what the deputies recalled and what witnesses Ansley and Brewer related. Credibility judgments are well within the jury's province and should not be disturbed on appeal. LSA-Const. art. 5 § 5(C) (1974); State v. Richardson, 425 So.2d 1228 (La.1983); State v. Jackson, 452 So.2d 1225 (La.App. 2d Cir.1984). Inconsistencies as to minor details do not wreck a witness's credibility. See State v. Evans, 512 So.2d 615 (La.App. 2d Cir.1987), writ denied 516 So.2d 367 (La.1988). In every significant respect the deputies corroborated what the other witnesses said. We will not disturb the jury's credibility call.
The constitutional argument, finally, lacks merit. The admission of hearsay evidence may deprive the defendant of a fair trial if the evidence lacks indicia of reliability. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). If this contested evidence were hearsay, it would be admissible because Deps. Luce and Tipton were thoroughly cross examined, thus imparting reliability. State in Int. of R.C. Jr., 514 So.2d 759 (La.App. 2d Cir.1987), writ denied 516 So.2d 128 (La.1987), and citations therein. However, the contested evidence is not hearsay and is admissible under an evidentiary rule which was expressly authorized and is presumed valid. LSA-Acts. 1956, No. 87; State in Int. of R.C. Jr., supra. Admissible evidence cannot be excluded simply because it incriminates the defendant. Kidd was not deprived of his constitutional right to a fair trial.
This assignment does not present reversible error.

Special jury charges
By his sixth assignment Kidd urges the trial court erred in failing to include three proposed special jury charges. These charges were timely filed with the trial court and read:
1. EXCULPATORY EVIDENCE must be provided to defense when it is material to guilt or punishment, regardless of good faith or bad faith of prosecutor. State v. Johnson, Sup 1983, 426 So.2d 95. Brady v. Maryland, [373 U.S. 83] 83 S.Ct. 1194 [10 L.Ed.2d 215] [(1963)].
2. Subject to the limitation of Article 723, on Motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs tangible objects [sic], buildings, places or copies or portions thereof, which are within the possession, custody or control of the state and which:
(1) are favorable to the defendant and which are relevant to the issue of guilt or punishment. LSA-C.Cr.P. art. 718 (1).

3. Upon motion of the defendant, the court shall order the District Attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before *181 a grand jury or copy thereof, of the defendant in the possession, custody, control or knowledge of the district attorney. LSA-C.Cr.P. art. 716 (A).

Under LSA-C.Cr.P. art. 708, the state and the defendant have the right to submit special written charges, subject to conditions not relevant to this case. Art. 807 further provides, in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The jurisprudence affirms that the trial court is required to give a requested special charge which complies with this article. State v. Marse, 365 So.2d 1319 (La.1978); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989).
In State v. Williams, All So.2d 255 (La. App. 1st Cir.1985), writ denied 475 So.2d 1102 (La.1985), the defense submitted special written charges which merely paraphrased LSA-C.Cr.P. art. 718, the general discovery article. The trial court refused to give the charges and the court of appeal affirmed. The court held that the issue of whether the state complied with discovery is a question of law and not suitable for jury consideration; thus an instruction along those lines is not proper in the jury charge.
In the instant case proposed special jury charges Nos. 2 and 3 merely restate discovery articles and are not pertinent to the jury's function. The trial court did not err in refusing to include these charges.
Proposed special jury charge No. 3, similarly, just restates the holding of Brady v. Maryland, supra. Both Brady and Agurs, supra, contemplate judicial resolution of discovery issues. This charge is not pertinent to the jury's function and the trial court did not err in excluding it.
This assignment does not present reversible error.

Sufficiency of evidence
By his first assignment Kidd urges the jury committed reversible error by finding him guilty as charged.
The constitutional standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LSA-C.C.P. art. 1979. All evidence, direct and circumstantial, must meet the Jackson standard for the conviction to stand. State v. Coutee, 545 So.2d 571 (La.App. 2d Cir.1989), writ denied 551 So.2d 1335 (La.1989). When there is conflicting testimony as to factual matters, the jury's credibility call will not be disturbed unless the evidence is clearly contrary. State v. Richardson, supra; State v. Coutee, supra.
The evidence already related as Facts is a summary of the testimony of Deps. Luce, Tipton and Ansley, and of former codefendant Willie Brewer. It easily establishes the meeting, negotiations and sale. This satisfies the "distribution" element of LSA-R.S. 40:967 A(1). The evidence further shows that the packet went from Kidd to Brewer to Ansley to Luce and, finally, to the crime lab. Also testifying was James Goebel of the North Louisiana Criminalistics Laboratory; he verified that the white powder was indeed cocaine, a Schedule II CDS. This satisfies the other essential element of the crime.
The defense reiterates that the testimony of Deps. Luce and Tipton should have been excluded and that the state's case, thus impaired, must fail. For the reasons already discussed, this evidence was admissible. Even if it were inadmissible, the trial court's action would not be reversible error; this evidence merely corroborated that of Dep. Ansley and Willie Brewer.
The defense next contends that Willie Brewer was totally unworthy of belief. Brewer turned state's witness, allegedly on the day of Kidd's trial; he got a big benefit from his plea bargain; and there were inconsistencies *182 in his testimony. We will concede that Brewer was not an excellent witness. On cross examination he was easily confused or misled into omitting the part of his story when he drove Dep. Ansley and Roxanne to look for Kidd and stopped to make the phone call. However, he corrected himself and included it; he included it on direct examination; and with the deputies' direct testimony that this drive and phone call occurred, the jury was entitled to accept Brewer's corrected version. Despite the obvious problems with a codefendant who elects to testify in exchange for a favorable plea bargain, Brewer maintained that he was telling the truth and the jury accepted it. We see no basis for reversal.
Finally Kidd cites the short testimony of his witness Laverne Mitchell, who is also Brewer's cousin. According to the state's evidence, Kidd was supposed to be at her apartment that day; Brewer drove by (with Roxanne and Dep. Ansley in the car) looking for him, to no avail; he called Ms. Mitchell's apartment and got no answer; when Kidd finally arrived, Brewer accosted him before he went inside. Ms. Mitchell testified that she was at home that day and nobody drove by or called for Kidd. She further testified that Kidd was already inside the apartment when Brewer knocked; and that Brewer never said anything about selling drugs, but rather lured Kidd away by saying he had "two fine-ass white girls around the corner, all they want is a little drugs and an all-night party." Her testimony is so out of step with the rest of the evidence that the jury was not wrong to disregard it.
Viewed in light most favorable to the prosecution, the evidence supports a rational trier of fact's conclusion that beyond a reasonable doubt Kidd distributed cocaine in violation of R.S. 40:967 A(1). This assignment does not present reversible error.

Excessive sentence
By his fifth assignment Kidd urges the trial court erred in imposing an excessive sentence of 15 years at hard labor. He cites a number of facts which would, he contends, militate in favor of a suspended sentence or probation.
The test of excessiveness is two-tiered. First the record must show that the sentencing judge considered the mandatory sentencing guidelines of LSA-C.Cr.P. art. 894.1. The judge need not list every factor, provided the record shows adequate compliance. State v. Smith, 433 So.2d 688 (La.1983). The goal of art. 894.1 is not rote recitation of the factors but the articulation of a factual basis. An adequate factual basis will obviate the need for remand even in the absence of full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
The second tier is constitutional excessiveness. A sentence violates LSA-Const. art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if it shocks the sense of justice, when the crime and punishment are considered in light of the harm done to society. State v. Hogan, 480 So.2d 288 (La.1985). The sentencing judge has wide discretion in imposing a sentence within statutory limits and such a sentence should not be set aside absent a manifest abuse of discretion. State v. Lanclos, supra; State v. Hudgins, supra. The judge is not bound to impose a suspended sentence or probation on a first felony offender; he may consider whatever factors and evidence he deems relevant to the public's and the defendant's best interest. State v. Washington, 414 So.2d 313 (La.1982); State v. McKethan. 459 So.2d 72 (La.App. 2d Cir. 1984).
*183 At the sentencing hearing the judge referred to the PSI and several letters he had received. Defense counsel was allowed to make a statement which brought out many positive points: Kidd had been married for about 17 years and had three children, aged 17, 14 and 5; he was a hardworking citizen, taxpayer and good provider for his family; he had led a crime-free life until this incident; the small amount of cocaine seized (.43 grams, or about 1/60 oz.) was consistent with personal use; he had a drug problem for a year and a half before his arrest but he was now seeking treatment; and he has a positive attitude.
The judge openly acknowledged the mitigating factors of Kidd's good employment and military record, as well as the hardship his dependents would suffer if he were in jail. The judge did not completely share counsel's view that Kidd had led a law-abiding life: there were convictions in 1971 for resisting arrest, in 1981 for simple battery, in 1987 and 1988 for DWI, first and second offenses, and in 1988 for two counts of battery on a police officer (these charges were actually pending when the instant offense occurred). The only prior CDS conviction was a 1987 guilty plea to possession of marijuana. Other CDS charges had been dismissed in 1986. One of the letters the judge received was from the prosecutor; it related that after the instant offense, on March 1, 1989 Kidd was arrested by Bossier City Police for possession of cocaine and codeine, and he had failed to appear for trial on those charges, resulting in the issuance of a bench warrant. Defense counsel acknowledged receipt of this letter and did not traverse it. R.p. 404. The upshot is that although Kidd was a first felony offender, he could not claim to have led a crime-free life.
The judge then questioned Kidd's "positive attitude." The written offender's statement in the PSI admitted a drug problem but denied selling the cocaine to Dep. Ansley; in open court he denied striking the police officers, even though he pled guilty to that offense six months earlier. Kidd sought treatment at the VA Hospital only after his arrest, trial and conviction, and did not submit to pre-trial drug screening. The judge thought that this indicated less of an intent to better himself than to improve his chances of probation. The pattern of denial and belated attempts at treatment made probation inadvisable. This conclusion is hard on Kidd but we cannot, on this record, label it an abuse of sentencing discretion.
The judge also noted that at age 40, Kidd is not a youthful offender, the sale of cocaine is a very serious offense and the crime resulted from circumstances that are likely to recur. These factors showed the need of correctional treatment. The judge's compliance with art. 894.1 was adequate and easily justifies the denial of probation and the imposition of a meaningful term of imprisonment.
As for excessiveness, we recognize that this was a small sale under "controlled" circumstances by a first felony offender. We equally recognize that Kidd's history does not show him to be an uninvolved, one-time seller or an inexperienced youth who simply "made a mistake." The sentence imposed, 15 years at hard labor in a range of five to 30, presses the outer limit of what we could affirm for this offense and offender, but it does not cross the line of manifest abuse of sentencing discretion. After much consideration, we cannot conclude that it shocks the sense of justice.
This assignment therefore does not present reversible error.

Conclusion
We have reviewed the record for errors patent and find none. LSA-C.Cr.P. art. 920(2). For the reasons expressed, Albert L. Kidd's conviction and sentence for distribution of cocaine are affirmed.
CONVICTION AND SENTENCE AFFIRMED.