716 So.2d 139 (1998)
STATE of Louisiana, Appellee,
v.
Darryl Dewayne GOODJOINT, Appellant.
No. 30727-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*141 Wilson Rambo, Louisiana Appellate Project, for Appellant.
*142 Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, Jimmy White, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and BROWN and STEWART, JJ.
BROWN, Judge.
Defendant, Darryl Dewayne Goodjoint, was found guilty of possession of cocaine with intent to distribute and sentenced to 12 years at hard labor. Defendant's appeal urges that the evidence was insufficient, that his motion to suppress was improperly denied, and that his sentence was excessive. We affirm.

Facts
Officers Mark Nappier and Trish Passman, members of the Monroe Police Department Jump Team,[1] testified that on November 19, 1996 at approximately 8:00 p.m. they were patrolling near the 2900 block of Renwick. The area was regularly policed because of complaints of drug activity and loitering. In particular, the owner of CC's Bar-B-Que, located on the corner of Renwick and Rogers, had made several complaints. As the officers approached that intersection, they noticed three individuals (one was the defendant) standing in the CC's Bar-B-Que parking lot.
Defendant was standing astride a bicycle with the two other men to his side. Officer Passman observed a "hand-to-hand exchange" of something between defendant and one of the other men. When the police car was spotted, the group dispersed in opposite directions. The officers drove around the block in an attempt to head off defendant.
The officers then pulled up beside defendant, who was riding his bicycle down Renwick Street, and asked that he stop. The officers were wearing jump team uniforms which had their names, badge numbers, badge insignia and the words "jump team" embroidered over the right chest area. Their police unit was marked on all four sides. Although he asked the officers what they wanted, defendant continued to ride the bicycle. Officer Passman, who was driving, pulled the patrol car ahead of defendant and stopped at a sideways angle. Defendant struck the front bumper of the police car, jumped off the bicycle and ran into a nearby yard.
During the chase, defendant ran into a cyclone fence, and fell to the ground.[2] When he began kicking, and refused to follow commands, Officer Passman sprayed defendant with pepper mace. Defendant was then handcuffed. At this point Officer Passman noticed a matchbox on the ground where defendant had fallen. The matchbox was approximately two to three inches from where defendant was lying on the ground. Officer Passman retrieved the matchbox and found inside what appeared to be 30 pieces of crack cocaine in a cellophane bag. Defendant, who was taken back to the patrol car, continued to struggle with the officers. He was again sprayed with pepper mace. The officers recovered $940 in cash from a personal search of defendant.

Discussion

Sufficiency of Evidence
The U.S. Constitution provides that no person shall be "deprived of life, liberty, or property without due process of law." The Fifth Amendment applies this limitation to the federal government, while the Fourteenth Amendment imposes the same restriction on the states. Implicit in the due process clause is the protection of an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. IN RE Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an accused has a constitutional right to appellate review of the evidence which determines whether the record could reasonably support a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Bosley, 29,253 (La. App.2d Cir. 04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The supreme court rejected the contention that a different standard applied to *143 circumstantial evidence, i.e., that it must exclude every reasonable hypothesis but that of guilty. Jackson v. Virginia, supra; State v. Sutton, 436 So.2d 471 (La.1983); State v. Chism, 436 So.2d 464 (La.1983). In Chism, our supreme court stated that La. R.S. 15:438 (which sets out the rule as to circumstantial evidence) "may not establish a stricter standard of review than [the more general reasonable doubt standard, but] it emphasizes the need for careful observance of the [reasonable doubt] standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, supra at 470. As explained in Sutton, if a hypothesis of innocence is sufficiently reasonable and sufficiently strong, then it would necessarily also create a reasonable doubt. Sutton, supra at 475, fn. 10.
Thus, all evidence is to be viewed in the light most favorable to the prosecution and if a rational trier of fact could have reasonably concluded that this evidence, both direct and circumstantial, proved beyond a reasonable doubt the elements of the offense, then the verdict must be upheld.
Defendant was charged with possession of cocaine with intent to distribute. The prosecution was required to prove beyond a reasonable doubt that defendant knowingly and intentionally possessed the drug with the specific intent to distribute. La. R.S. 40:967(A).
One need not actually possess the controlled dangerous substance; constructive possession is sufficient to convict. State v. Tyler, 544 So.2d 495 (La.App.2d Cir.1989). Constructive possession means having an object subject to one's dominion and control, with knowledge of its presence, even though it is not in one's physical possession. State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991). Access to the area where the drugs were found and an accused's physical proximity to the drugs are significant factors in determining constructive possession. State v. Tyler, supra.
Officer Passman testified that he saw defendant engage in a hand-to-hand exchange in an area where specific complaints had been received regarding drug dealing. When the officers attempted to talk with defendant, he broke and ran. Once defendant was apprehended, Officer Passman found a matchbox containing what appeared and was later confirmed to be 30 rocks of crack cocaine. Although neither officer saw defendant throw or drop the matchbox, it was found only inches from his body in a yard that was not a common place for loitering or foot traffic. Both officers testified there was no one within at least 30 feet of the area where defendant was apprehended.
The jury found these circumstances sufficient to prove that defendant had physical possession of the matchbox during the chase and discarded it just prior to being caught. Our review is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A jury is free to choose among reasonable constructions of the evidence. Viewing the evidence in the light most favorable to the state, we conclude that it was sufficient to allow a reasonable jury to find beyond a reasonable doubt that defendant possessed the cocaine.
Having determined that defendant possessed the cocaine, the next inquiry concerns his intent. Factors that help in determining whether defendant intended to distribute the cocaine include: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by defendant; (3) a large amount or quantity of the drug; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of paraphernalia commonly used in distribution. State v. House, 325 So.2d 222 (La.1975); State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La.1993). Testimony of the street value of the drug is also relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La.1976).
Officer Mark Nappier was qualified by the trial court as an expert in evaluation of street level sales of cocaine. He testified that the *144 matchbox contained varying sized pieces and that the value of the individual pieces would be either $10 or $20. Nappier further testified that the approximate value of all of the rocks was $400-$500 and that this amount was inconsistent with personal usage. No paraphernalia associated with personal consumption was recovered from defendant; however, $940 in cash was found on his person at the time of the arrest. There was also the hand-to-hand exchange witnessed by Officer Passman. Again, we find no reason to disagree with the jury's finding these circumstances were sufficient to infer beyond a reasonable doubt that defendant had the requisite intent to distribute the cocaine.
Next, defendant alleges that the state failed to prove that the substance recovered from the matchbox was actually cocaine. Defendant complains that the apparatus used to test the "rocks" found in his possession, known as a Gas Chromatograph Mass Spectrophotometer (GCMS), had no criterion for certification of it or its operator. He points out that the state has legislatively imposed certification requirements for both machine and operator in testing blood alcohol and that appropriate regulations should also be required for the GCMS. Defendant further contends that because the lab tested only one of the 30 rocks recovered, the state failed to prove that all of the rocks were in fact cocaine.
Susan Rutledge, a forensic chemist with the North Louisiana Crime Lab in West Monroe, Louisiana, was qualified by the trial court as an expert.[3] Ms. Rutledge testified that she tested the evidence submitted by the Monroe Police Department. Ms. Rutledge testified that she did a "presumptive" test on three sample pieces of the suspected cocaine.[4] After the three pieces tested positive for cocaine, one of those sample pieces was tested with the GCMS. That sample was conclusively determined to contain cocaine. Ms. Rutledge testified that it is the usual practice to test a representative sample due to the caseload and the amount of time it would require to test every piece.
In support of the accuracy of the GCMS, Ms. Rutledge testified that while there is no certification requirement in place, the machine has a failsafe mechanism that will not allow it to work if it is not "tuned" properly.[5]
While the legislature has adopted regulations with regard to the certification of machinery and individuals testing blood for alcohol content, the same or similar regulations have not been established for testing of controlled substances. Until such time, absent a showing that there is some flaw or problem with the testing procedure, additional requirements for use of the GCMS should not be jurisprudentially imposed.
Defendant's arguments regarding the cocaine tend to go to the weight of the evidence and not to its admissibility. The jury had the opportunity to hear the testimony of Ms. Rutledge regarding the procedures employed during the testing, and could have rejected her findings, but, in their much discretion, chose not to do so. See State v. King, 95-1648 (La.App. 3d Cir. 10/09/96), 683 So.2d 1228; State v. Rodriguez, 569 So.2d 5 (La.App. 3d Cir.1990); State v. Ballom, 562 So.2d 1073 (La.App. 4th Cir. 1990); State v. Neville, 524 So.2d 1338 (La. App. 1st Cir.1988); State v. Williams, 471 So.2d 255 (La.App. 1st Cir.1985).[6]

*145 Stop and Seizure of the Evidence

Defendant argues that the stop itself was illegal as Officers Passman and Nappier had no reasonable suspicion to detain him and thus, any evidence obtained after the stop is fruit of a poisonous tree. Defendant's pretrial motion to suppress this evidence was denied.
In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993). Great weight is afforded to the trial court's determination of a motion to suppress, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. White, 27,188 (La.App.2d Cir. 08/23/95), 660 So.2d 515; State v. Jackson, 26,138 (La.App.2d Cir. 08/17/94), 641 So.2d 1081.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); La.C.Cr.P. art. 215.1; State v. Fauna, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978). However, the stop must be based on reasonable cause for a belief that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, Ossey v. Louisiana, 469 U.S. 916,105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Washington, 621 So.2d 114 (La.App. 2d Cir. 1993). Reasonable cause is something less than probable cause, but requires that an officer be able to "articulate" facts that support a suspicion that the detainee is committing, has committed or is about to commit an offense. La.C.Cr.P. art. 215.1; State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Rodriguez, 396 So.2d 1312 (La.1981); State v. Washington, supra.
Whether or not an officer making an investigatory stop has "reasonable cause" to detain an individual depends on the facts of each case. State v. Ossey, supra; State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Flanagan, 29,316 (La.App.2d Cir. 04/02/97), 691 So.2d 866.
At the motion to suppress hearing, Officer Passman testified that he knew defendant on sight because he had been present on previous occasions when defendant was arrested. Officer Passman's knowledge that the corner where defendant was initially spotted was "a hot area as far as the druggers were concerned," combined with the hand-to-hand exchange witnessed by Officer Passman, created a reasonable belief or suspicion to stop defendant for questioning in accordance with La.C.Cr.P. art. 215.1. Thereafter, defendant broke and ran and abandoned the matchbox. The circumstances of this case support a reasonable suspicion that defendant may have been connected with criminal activity and a brief intrusion for questioning was not unreasonable. When defendant ran, this suspicion became probable cause. In this case, however, cocaine was not the fruit of a seizure. Defendant did not comply with the command of the officers to stop and was not seized until he fell to the ground. The matchbox was abandoned prior to the seizure. See California v. Hodari, D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

Excessive Sentence
Defendant urges that the trial court erred in imposing an excessive sentence and that it did not articulate a factual basis for the sentence as required by La.C.Cr.P. art. 894.1.
The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir. 04/02/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (1988).
Defendant was 26 years old, had both a juvenile and adult record, and was classified *146 as a second felony offender, having previously pled guilty to possession of cocaine which was reduced from possession with intent (to distribute).[7] Defendant also had misdemeanor convictions for battery on an officer, resisting during arrest and possession of marijuana. He had been on probation twice and was deemed uncooperative by the probation officers in both instances. In fact, defendant's parole had been revoked. There were no mitigating circumstances noted by the trial court. The trial court properly considered all factors and stated its factual basis for the sentence imposed.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La. App.2d Cir. 04/02/97), 691 So.2d 345; State v. Henton, 28,576 (La.App.2d Cir. 09/25/96), 682 So.2d 777.
Defendant's sentencing range was from five to thirty years with a possible fine of up to $50,000. A 12-year sentence for a second felony offender with an extensive juvenile and misdemeanor record and previous history of noncompliance with supervision does not shock the sense of justice. See also State v. Martin 29,717 (La.App.2d Cir. 09/24/97), 702 So.2d 739; State v. Devoil, 27,295 (La.App.2d Cir. 09/27/95), 661 So.2d 664; State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992); State v. Kidd, 568 So.2d 175 (La.App. 2d Cir.1990).[8]

Conclusion
For the foregoing reasons, the conviction and sentence of the defendant, Darryl Dewayne Goodjoint, are AFFIRMED.
NOTES
[1] The jump team is a street level narcotics, crime interdiction, and tactical unit.
[2] Officer Passman also ran into the fence and sustained a sprained shoulder.
[3] Ms. Rutledge testified that she received a Bachelor of Science with her major in chemistry; she has attended approximately 200 hours of training on the GCMS given by Hewlett-Packard, the GCMS manufacturer; she has 15 years experience working for the crime lab; and she has been qualified as an expert in this field on at least 100 other occasions.
[4] The "rocks" were chosen randomly taking one out of every ten. Each one was tested with a cobalt solution that turns blue if the sample contains properties consistent with the class of drugs into which cocaine falls.
[5] The GCMS uses a type of wavelength to determine the various properties contained in a tested substance.
[6] Defendant also argues that the trial court was wrong in denying his motion for a new trial. La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law, of which we find none. State v. Mitchell, 26,070 (La.App.2d Cir. 06/22/94), 639 So.2d 391 (citations omitted).
[7] Defendant's sentence was affirmed by this court in a published opinion, State v. Goodjoint, 26,246 (La.App.2d Cir. 08/17/94), 641 So.2d 730. In that case, after a traffic stop defendant was found to be in possession of a matchbox containing 12 "rocks" of crack cocaine.
[8] Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La. App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). While the defendant combines several assignments for the purpose of argument, his assignment urging the trial court's error in denying his motion for mistrial was not briefed and is thus considered abandoned.