740 So.2d 691 (1999)
STATE of Louisiana, Appellee,
v.
John David DANIELS, Appellant.
No. 32,017-KA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*693 Sam O. Henry, IV, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, H. Stephens Winters, Assistant District Attorney, Counsel for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
BROWN, J.,
Defendant, John David Daniels, was found guilty of distribution of cocaine, a violation of La. R.S. 40:967. He was sentenced to a five-year term at hard labor. Defendant's motion for a new trial was denied. He now appeals his conviction. We affirm.

DISCUSSION

Sufficiency of the Evidence
Claiming misidentification, defendant contends that the evidence was insufficient to support his conviction.

Standard of review
The Fifth Amendment to the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property without due process of law." The Fourteenth Amendment imposes the same due process requirement on the states. Implicit in the due process clause is the protection of an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); IN RE Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Goodjoint, 30,727 (La.App.2d Cir.06/24/98), 716 So.2d 139. Thus, an accused is entitled to an appellate review of the evidence to the extent that it supports a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Goodjoint, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
This standard, initially enumerated in Jackson and now legislatively embodied in La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Cotton, 25,940 (La. App.2d Cir.03/30/94), 634 So.2d 937. Ultimately, under Jackson all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
A violation of La. R.S. 40:967(A)(1) occurs when any person knowingly or intentionally distributes, physically delivers or administers cocaine, a schedule II CDS. A defendant is guilty of distribution of cocaine when he transfers its possession or *694 control to the intended recipient. State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Martin, 29,717 (La. App.2d Cir.09/24/97), 702 So.2d 739.

Evidence
Defendant's arrest was the result of a Metro Narcotics Unit ("Metro") undercover drug operation. On March 18, 1996, Detective Harold Freeman of the West Monroe Police Department and Deputy Jeremy Taylor of the Winn Correctional Center were working with Metro specifically targeting an individual known as "Arkansas," who was allegedly selling drugs out of Room 13 at the Jackson Motel in West Monroe.[1] Equipped with a body wire, hand-held radio and buy money, Taylor and a confidential informant ("C.I.") proceeded to Room 13. Freeman monitored the events from his car, which was parked a few blocks away. Upon their arrival at Room 13, Deputy Taylor and the C.I. were met by a man identified to Taylor by the C.I. as "J.D." Deputy Taylor told J.D. that he was looking for Arkansas to purchase crack cocaine. J.D. informed Taylor that Arkansas was across the street and to wait while he went to get him. Deputy Taylor and the C.I. then waited inside the room for a few minutes until J.D. returned with three rocks of crack cocaine which he offered to sell for "five-O" ($50). Deputy Taylor agreed. The transfer took place and Deputy Taylor and the C.I. left the scene. J.D. was identified by Deputy Taylor as defendant, John David Daniels.
Defendant argues that the state did not bear its burden of negating all reasonable probability of misidentification by Deputy Taylor.
In cases involving a defendant's claim that he was not the person who committed the crime, the state bears the burden of negating any reasonable probability of misidentification. State v. Long, 408 So.2d 1221 (La.1982); State v. Hubbard, 30,604 (La.App.2d Cir.04/08/98), 711 So.2d 393; State v. Powell, 27,959 (La. App.2d Cir.04/12/96), 677 So.2d 1008.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Brown, 29,708 (La.App.2d Cir.09/24/97), 702 So.2d 744; State v. Ford, 28,724 (La. App.2d Cir.10/30/96), 682 So.2d 847. The testimony of a single undercover officer is sufficient to convict one charged with distribution of drugs. State v. Thompson, 27,543 (La.App.2d Cir.12/06/95), 665 So.2d 686; State v. Daniels, 607 So.2d 620 (La. App. 2d Cir.1992).
The record shows that when Deputy Taylor first saw defendant at the motel, he was told by the C.I. that defendant was known as "J.D." Deputy Taylor observed defendant face-to-face twice for two or three minutes each time, purchased three rocks of cocaine from him for $50 and identified him from a photographic lineup the next day. Deputy Taylor stated that he had no doubt that defendant was the person from whom he had purchased the drugs.
Viewing all the evidence in the light most favorable to the state, the jury could have reasonably concluded that defendant was the individual who sold the cocaine to Deputy Taylor. Under our appellate review standard, this is all that can be considered.

Motion for Mistrial
Defendant claims that the trial court erred in not granting his motion for mistrial based on prejudicial statements made by one juror to other jurors after the first day of voir dire but before the jury *695 had been sworn. Defendant argues that the trial court should have excused all jurors who heard the prejudicial remarks.
La.C.Cr.P. art. 775 provides in part that upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized by Article 770 or 771.
A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Hattaway, 28,060 (La.App.2d Cir.05/08/96), 674 So.2d 380 (citations omitted). The decision to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. Id.
After the first day of voir dire but before the jury had been sworn, a prospective juror, Ms. Paxton, who had not been questioned in this particular case, informed defense counsel that Mr. Maxie Mayo, a prospective juror who had been voir dired, made comments about defendant. Ms. Paxton indicated to the court that Mr. Mayo told her and another prospective juror that defendant would not have been charged had he not been guilty and that his mind was made up.
The court then questioned Mr. Mayo, who admitted to making these comments and stated that his views had not changed. The trial court then, on its own motion, excused Mr. Mayo.
The court thereafter questioned each prospective juror individually. While some prospective jurors admitted to hearing Mr. Mayo's comments, only one, Mr. Young, indicated that he could not be fair and impartial. Mr. Young stated that he also believed a defendant to be guilty until proven innocent. The trial court, on its own motion, excused Mr. Young.
At the conclusion of voir dire, the trial court stated that although some jurors had heard Mr. Mayo's comments, there were no indications that the remaining jurors would not be fair and impartial. Defense counsel objected to this ruling and moved for a mistrial.
In State v. Monroe, 397 So.2d 1258 (La. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983), rehearing denied, 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983), the defendant claimed that "the trial judge erred in denying his motion for a mistrial when a prospective juror stated, `I don't think [the defendant] would be here if the district attorney didn't think he did something.'" The defendant argued that he could not receive a fair trial because any jurors who heard such a remark would be influenced by it.
The supreme court found defendant's assignment without merit for the following reasons:
The jurors who were chosen swore to accept the law as given to them by the judge. They were instructed on the presumption of innocence. Implicit in defendant's argument is the assumption that, because the jurors heard this remark, they were unable to accept the law as given to them by the judge. We do not believe this prospective juror's statement could have had such an impact. The complained of remark was a typical misconception of the law the type that voir dire is designed to dispel.
State v. Monroe, supra at 1266.
In the case at bar, the comment by the prospective juror, Mr. Mayo, was the usual type of misconception that voir dire is designed to dispel. The court conducted an individual questioning of each of the remaining potential jurors on this topic. The trial court then excused Mr. Mayo and Mr. Young because they admitted an inability to be fair and impartial. All other prospective jurors, including the ones who heard Mr. Mayo's comments, indicated that they could be fair and impartial.
*696 The remaining jurors swore to accept the law as given to them by the trial judge. The trial court instructed the jurors on the presumption of innocence, the burden of proof necessary to sustain a conviction and the evidence which could not be considered in reaching a verdict. Thus, the record reflects that the trial court did not err in denying defendant's motion for a mistrial.

Exclusion of Juror
Defendant contends that the trial court erred in not excusing prospective juror Kecia Hamilton after she testified that she heard defendant speak during a court recess.
While Ms. Hamilton was being examined, the electricity went off in the courtroom. The trial court called a recess and instructed the jurors who had already been questioned to remain in courtroom # 6, while the jurors who had not been questioned were asked to remain in the deliberation room. The court then instructed Ms. Hamilton to remain in courtroom # 2 until she was told otherwise.
After the recess, Ms. Hamilton again took the stand and the trial court continued its questions concerning Mr. Mayo's comments. When the court finished, defense counsel asked Ms. Hamilton if she had heard defendant talking to his family during the recess. Ms. Hamilton admitted to hearing defendant speak, but stated that she could not understand what he said. At this point defendant had exhausted all of his peremptory challenges.
Defendant now contends that because Ms. Hamilton heard his voice, his 5th Amendment right to remain silent was violated. The trial court's instruction, however, confining Ms. Hamilton to the courtroom during the recess, was made in the presence of defendant and his counsel. Unlike Ms. Hamilton, defendant, who was on bond, was free to leave the courtroom during the break. Although the lights were off, the courtroom was not dark. The court notes that there were at least six double pane windows which allowed sunlight to enter. Thus, there is no reason that defendant should not have been aware of Ms. Hamilton's presence in the courtroom. Defendant's choice to speak with his family was clearly a decision made of his own free will. He was not compelled to testify or to speak.
The state introduced into evidence and played for the jury an audio tape of the transaction constituting the crime for the purpose of corroborating the encounter. Deputy Taylor identified defendant as the person who delivered and sold the rocks of cocaine. Defendant did not testify at the trial and the jurors, with the exception of Ms. Hamilton, had no way of comparing defendant's voice with that of the man on the tape recording. We note that defendant did not object to the introduction of the tape recording which contained an identification by the C.I. of the seller as J.D.
A stronger argument would have been that Ms. Hamilton might have obtained knowledge not available to the other jurors. However, a defendant may not deliberately act in a manner to prejudice his case and then attempt to profit by his own misconduct. In any event, we have reviewed the tape recording. Its poor quality, coupled with Ms. Hamilton's testimony that she was unable to understand what defendant said in the courtroom, demonstrates that she could not have identified defendant by his voice. Thus, there was no prejudice shown. Further, a person's voice when used for identification purposes is a physical characteristic not protected under the Fifth Amendment. See United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); State v. Tillett, 351 So.2d 1153 (La.1977); State v. Martin, 519 So.2d 87 (La.1988). In this case, however, no attempt was made to identify defendant by his voice.

Photo Lineup
Defendant was identified by Deputy Taylor the day following the transaction in a photo lineup.
*697 Defendant contends that the introduction of the photo lineup, which consisted of his and four others' mug shots, violated La. C.E. art. 404(B) because it indirectly introduced evidence of other crimes.
In State v. Hall, 261 La. 777, 260 So.2d 913 (1972), the supreme court held that the trial court did not abuse its discretion by admitting a photo lineup, which consisted only of "mug shots," because they were "relevant as a predicate to show the fairness of the identification process." In State v. Hall, the booking numbers had been covered before the pictures were viewed by the jury.
Consistent with State v. Hall, supra, the trial court in this case, outside the jury's presence, ordered the state to cover the booking data and to instruct their witnesses not to use the term "mug shot" or refer to defendant's prior criminal record. The trial court further offered each party an opportunity to have the lines in the background, commonly used to determine the height of the person in the photograph, covered if it was possible without damaging the evidence. Unfortunately, neither party was able to do so. The trial court allowed the photographs, as altered, into evidence, at which time defendant maintained his objection.
A crucial element of the state's burden was whether Deputy Taylor properly identified defendant as the person who sold him crack cocaine. Because trial was held more than a year after defendant sold the drugs to Deputy Taylor, the probative value of the photographs, to show fairness in the identification process, outweighed any prejudicial effect the lines in the background may have caused. See State v. Hall, supra; State v. Chairs, 493 So.2d 202 (La.App. 5th Cir.1986).

Closing Argument
Defendant contends that the trial court erred in allowing the state to refer to defendant's subpoena power in closing argument, claiming that the state misled the jury into believing that defendant had the burden of proving his innocence.
La.C.Cr.P. art. 774, pertaining to closing arguments, provides that the state's rebuttal shall be confined to answering the argument of the defendant.
The relevant portions of each parties' closing argument in the present case are as follows:
Defendant's-closing: Now, the target of the investigation was a man named Arkansas. And this is Arkansas. He's upstairs. The State could have called him. He's two floors up right now, sitting there in the custody of the State. He could have cleared the whole thing up. The state didn't call him as a witness....
State's-rebuttal: Mr. Henry hangs the horns on me a little bit. He says they could have had Arkansas down here. But, this is this gentleman's trial. And if Mr. Steven Ford or Arkansas is incarcerated, which I assume that he is, I don't know. I did not handle Mr. Steven Ford's case. But, if he is incarcerated and this is Mr. John David Daniel's trial, Mr. Henry also has subpoena power. And he could have subpoenaed him....
The record clearly shows that defendant raised, during his closing argument, the issue of why the state did not subpoena Arkansas to testify. As such, the state had a right to answer this argument on rebuttal. La.C.Cr.P. art. 774; State v. Strange, 334 So.2d 182 (La.1976). We find that the state's rebuttal was appropriately confined to defendant's argument. See State v. Guillory, 97-179 (La.App. 3d Cir.03/11/98), 715 So.2d 400. Thus, the trial court did not err in overruling defendant's objection.

Jury Pool
Defendant contends that the trial court erred in not granting his motion for new trial based on the clerk of court's *698 failure to broaden the jury pool as required by La.C.Cr.P. art. 408.1.
La.C.Cr.P. art. 408.1, in effect at the time of defendant's trial, provided:
In developing a list of all persons who may be called for grand or petit jury duty, a jury commission shall draw names from a master list derived from voter registration lists, lists of actual voters, motor vehicle license and registration records, lists of individual utility customers, if made available by the utility company, and such other sources as may be approved by a majority of the district judges of the judicial district for which the master list is compiled.
Defendant argues and the state concedes that the jury pool consisted only of registered voters.
In State v. Ashworth, 97-2917 (La.11/25/97), 704 So.2d 228, the defendant argued that the general, grand jury, and petit jury venires in Louisiana should be quashed based solely on violation of the statutory requirements in La.C.Cr.P. art. 408.1. The supreme court found that "[i]n all cases, the burden of proof `rests on defendant to establish purposeful discrimination in the selection of the grand and petit jury venires.'" (Citation omitted.) The supreme court further found that "even the exclusive use of voter registration lists, without any showing in the record of any discrimination against a class of people, does not establish a violation of the Sixth Amendment fair cross-selection requirement." (Citations omitted.) The supreme court found that the Jury Commission's nonobservance of 1997 La. Acts No. 886 appeared to reflect confusion over the new law and granted the 33rd Judicial District Court a reasonable time, not to exceed March 1, 1998, in which to reconstitute venires according to La.C.Cr.P. art. 408.1. The legislature in 1998 amended art. 408.1 to allow each judicial district the choice of using other sources or exclusively voter lists.
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, defendant's convictions and sentences are affirmed.[2]
NOTES
[1] "Arkansas" is Steven Ford's alias and street name.
[2] Our review of the record reveals one error patent. After defendant was convicted for distribution of cocaine, the court sentenced him to "five years at hard labor."

La. R.S. 40:967 provides that:
Distribution, dispensing, or possession with intent to produce, manufacture, distribute or dispense cocaine base or a mixture or substance containing cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule II(A)(4) of R.S. 40:964 shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars. (Emphasis added).
Pursuant to La. R.S. 40:967, the trial judge should have sentenced defendant to five years hard labor without benefit of parole, probation, or suspension of sentence. Defendant's sentence therefore is illegally lenient; however, because the state failed to appeal, this court may not correct this illegality nor may we remand the matter for resentencing. State v. Fraser, 484 So.2d 122 (La.1986); State v. Moore, 26,329 (La.App.2d Cir.08/17/94), 642 So.2d 679.